517 F.Supp. 105 (1981)
ASSOCIATION FOR RETARDED CITIZENS IN COLORADO; Legal Center For Handicapped Citizens; Estevan Solis, Jr., a minor by and through his parents, Estevan and Olivia Solis; Timmy Clare, a minor by and through his parents, Robert and Sally Clare; Amy Becker, a minor by and through her mother Carol Becker; Russell Langren, a minor by and through his parents, Raymond and Rita Langren; Walter Philip Hilton, by and through his parents, Leslie and Elaine Hilton; and All Other Persons Similarly Situated, Plaintiffs,
v.
Calvin FRAZIER, individually and in his capacity as Commissioner of the Colorado Department of Education; and the Colorado Department of Education, Defendants.
Civ. A. No. 80-K-563.
United States District Court, D. Colorado.
May 20, 1981.
*106 *107 Bruce C. Bernstein, Chester R. Chapman, Legal Center for Handicapped Citizens, Denver, Colo. for plaintiffs.
JoAnn Soker, Jeffrey A. Weinman, Thomas V. Holland, Asst. Attys. Gen., Denver, Colo., for defendants.

ORDER
KANE, District Judge.
This is a class action suit by and on behalf of all handicapped children ages five to twenty-one living at the state home and training school at Ridge who have allegedly been denied a free appropriate public education *108 as required by the Education for all Handicapped Children Act of 1975, Public Law 94-142, 20 U.S.C. §§ 1401 et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and the Fourteenth Amendment. Ridge is a public residential care facility for the mentally retarded. Plaintiffs seek declaratory and injunctive relief for the deprivation of their constitutionally protected civil rights and federal statutory rights. The gravamen of the complaint is that both the local educational agencies in Jefferson County, Colorado, and in the counties where the handicapped children's parents reside refuse to provide the children with an individualized educational program necessary for their educational development as required by federal law. The action is pursuant to 42 U.S.C. § 1983. Jurisdiction is conferred by 28 U.S.C. §§ 1331, 1343(3) and (4), and 20 U.S.C. § 1415(e).
On July 9, 1980, defendants Frazier, the Commissioner of the Colorado Department of Education, and the Colorado Department of Education moved to dismiss this action alleging failure to state a claim, failure to exhaust administrative remedies, failure to join indispensable parties, or in the alternative, they argued the court was estopped from hearing the matter and that the court should abstain. After hearing on August 19, 1980, I held that there was a claim under 42 U.S.C. § 1983 and denied the motion to dismiss or for summary judgment. I indicated that additional parties might be necessary but that such could be determined after further discovery. I also declined to abstain and rejected the defendants' estoppel by inference argument. I instructed the parties to proceed with discovery through interrogatories to identify the necessary parties, claims for relief, documents, and the contested issues of fact and law. I indicated that a status conference would be set in mid-October to evaluate the information received. On October 21, 1980, the parties again raised the issues of jurisdiction and indispensable parties. I granted the opportunity to file briefs regarding the motion to dismiss or for summary judgment. Defendants renewed the motion to dismiss or for summary judgment raising once again the issues of failure to state a claim, failure to exhaust administrative remedies, failure to name indispensable parties, and estoppel. The issues have been fully briefed by both parties. I will now rule on all these issues.

JURISDICTION UNDER PUBLIC LAW 94-142
Defendants argue that the plaintiffs' complaint fails to state a claim under the Education for All Handicapped Children Act (hereinafter referred to as P.L. 94-142) because, they say, it does not apply to handicapped children receiving educational services in a state-operated program not funded by P.L. 94-142 funds but by funds pursuant to former Public Law 89-313, now codified at 20 U.S.C. §§ 2771, 2772 (hereinafter referred to as P.L. 89-313). P.L. 94-142 requires that in order to qualify for funds under the act a state must demonstrate that it has in effect "a policy that assures all handicapped children the right to a free appropriate public education." 20 U.S.C. § 1412(1). The state must develop a plan pursuant to section 1413(b) to make concrete its assurances, 20 U.S.C. § 1412(2); must establish priorities regarding the education of handicapped children, 20 U.S.C. § 1412(3); must require local educational agencies to keep records of individual plans for handicapped children, 20 U.S.C. § 1412(4); must establish procedural safeguards as required by section 1415 to assure a free appropriate public education for all handicapped children, 20 U.S.C. § 1412(5); must assure, through its state educational agency, that all educational programs administered by it and other state or local agencies are under its supervision and comply with state educational standards, 20 U.S.C. § 1412(6); and must assure that procedures are established for consulting individuals or entities concerned with or involved in the education of handicapped children and that public hearings are held on the matter, 20 U.S.C. § 1412(7). Under P.L. 94-142 a "free appropriate public education" means

*109 special education and related services which (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the state educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the state involved, and (D) are provided in conformity with the individualized educational program required under section 1414(a)(5) of this title.
20 U.S.C. § 1401(18). "Special education" is defined as "specially designed instruction, at no cost to parents or guardians, to meet the unique needs of a handicapped child, including classroom instruction, instruction in physical education, home instruction, and instruction in hospitals and institutions." 20 U.S.C. § 1401(16). "Related services" are those services which "may be required to assist a handicapped child to benefit from special education...." 20 U.S.C. § 1401(17). These include transportation and developmental, corrective, and supportive services such as speech pathology, audiology, recreation, psychological services, certain medical services, physical therapy, occupational therapy, and counseling services.
Under P.L. 94-142 the individualized educational program (IEP) gives substance to the required "free appropriate public education." An IEP is defined as a:
written statement for each handicapped child developed in any meeting by a representative of the local educational agency or an intermediate educational unit who shall be qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of handicapped children, the teacher, the parents or guardian of such child, and whenever appropriate, such child, which statement shall include (A) a statement of the present levels of educational performance of such child, (B) a statement of annual goals, including shortterm instructional objectives, (C) a statement of the specific educational services to be provided to such child, and the extent to which such child will be able to participate in regular educational programs, (D) the projected date for initiation and anticipated duration of such services, and (E) appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved.
20 U.S.C. § 1401(19). The IEP must be reviewed and revised by the local educational agency at least annually. 20 U.S.C. § 1414(a)(5).
P.L. 89-313, enacted in 1965, added section 241c-1 to Title 20 of the United States Code which provided for a federal funding program for handicapped children served directly by state agencies. The funding program was reenacted pursuant to the Education Amendments of 1978, Public Law 95-561, and is now codified at 20 U.S.C. §§ 2771, 2772. The focus of defendants' argument is that recipients of P.L. 89-313 funds need not comply with all of the P.L. 94-142 requirements. They contend that Ridge is funded by P.L. 89-313 and not P.L. 94-142. Defendants point out that congress has failed to clarify the requirements which must be met by directly funded state agencies in the provision of a free appropriate public education for handicapped children within those state agencies. Nevertheless, a free appropriate public education still must be assured for those children.
Under the reenacted P.L. 89-313 each child in the state facility must be provided an educational program commensurate with his special needs. 20 U.S.C. § 2722. The state requires that programs and projects receiving grant monies under section 2771 comply with subpart 3 of part A, viz., 20 U.S.C. §§ 2731, 2734, 2736(a), (b), (c), 2737, 2738, 2739, and 2740. Under section 2731 an application must be filed and approved setting forth the manner in which the funds will be used. Section 2734 sets forth the permissible uses of funds and requirements for the design and implementation of programs for handicapped children. In order to receive funds the local educational agency must identify handicapped children, identify the general instructional areas of the program, and identify the children's *110 special educational needs. 20 U.S.C. § 2734(b). The provision requires the planning of a program in coordination with other programs, evaluation of the program, and teacher, school board and parental involvement. 20 U.S.C. § 2734(c), (f), (g), (i), and (j). Extensive parental involvement is required in the form of a parental advisory council. 20 U.S.C. § 2735. A complaint procedure is set forth in section 2738 by which local educational agencies are required to establish written procedures for resolution of complaints which shall provide for investigation, presentation of evidence and questioning by the complaining party, a right to appeal to the state educational agency and the dissemination of information. See also 20 U.S.C. §§ 2815, 2834. Section 2739 encourages, but does not expressly require, the development of an IEP agreed to by the local educational agency, teacher, parents or guardian, and child, if appropriate. However, the regulations under P.L. 89-313 mandate that an educational program be designed. 45 C.F.R. § 116b.50(a).
While the requirements under the reenacted P.L. 89-313 are not totally dissimilar from those under P.L. 94-142, they are different. The requirements of P.L. 94-142 are decidedly more comprehensive and pertain to all handicapped children. See, e. g., 20 U.S.C. §§ 1412(1), 1412(2)(A), (B), and (C), 1412(5). Further, defendants concede that the state plan required by 20 U.S.C. § 1413 must assure that funds received under any federal program other than P.L. 94-142, expressly including section 241c-1 [P.L. 89-313 or former section 2771], "under which there is specific authority for the provision of assistance for the education of handicapped children," must be utilized "only in a manner consistent with the goals of providing a free appropriate public education, except that nothing in this clause shall be construed to limit the specific requirements of the laws governing such Federal programs; ...." 20 U.S.C. § 1413(a)(2). Although the imposition of P.L. 94-142 requirements would not in any way limit the intended use of P.L. 89-313 or section 2771 funds for handicapped children, they would impose additional requirements.
The procedural safeguards set forth in section 1415 differ from those in section 2738. See also 20 U.S.C. §§ 2815, 2834. Under P.L. 94-142 the parents or guardian of a handicapped child must be given the opportunity to examine "all relevant records with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public education ... and to obtain an independent educational evaluation...." 20 U.S.C. § 1415(b)(1)(A). Written prior notice is required regarding any initiation or change, or any refusal to initiate or change, the placement or educational program for the child. 20 U.S.C. § 1415(b)(1)(C). The parents must be given the opportunity to present a complaint. 20 U.S.C. § 1415(b)(1)(E). When a complaint has been received an impartial due process hearing must be afforded. 20 U.S.C. § 1415(b)(2). The hearing may be conducted at the local or state level, with appeal to the state educational agency if it is conducted at the local level. Id., 20 U.S.C. § 1415(c). The state hearing decision is final, 20 U.S.C. § 1415(e)(1), except for judicial review, 20 U.S.C. § 1415(e)(2).
The regulations promulgated pursuant to P.L. 94-142 are more extensive than those pursuant to P.L. 89-313. Compare 45 C.F.R. §§ 121a et seq., with 45 C.F.R. §§ 116b et seq. Three specific requirements of the P.L. 94-142 regulations are adopted under P.L. 89-313 or section 2771, to wit: (1) the state educational agency must assure that "all educational programs for handicapped children, including all programs administered by any other State or local agency," [must be] under its general supervision, 45 C.F.R. § 116b.71, see U.S.C. § 1412(6); (2) funds under a P.L. 89-313 or section 2771 program must be "used only in a manner consistent with a goal of providing a free appropriate public education for all handicapped children," although this requirement does not limit the requirements of section 2771 requirements, 45 C.F.R. § 116b.72, see 20 U.S.C. § 1413(a)(2); and (3) programs under P.L. 89-313 or section *111 2771 must meet the educational standards of the state educational agency, 45 C.F.R. § 116b.73, see 20 U.S.C. § 1412(6).
Although the limited adoption of P.L. 94-142 requirements under P.L. 89-313 might suggest limited application, a comment to section 116b.70 states "[t]he Commissioner [of Education] advises each recipient to read the relevant regulatory provisions in part 121a, since those regulations provide additional specific rules for meeting the requirements in 116b.71 through 116b.74." Section 116b.74, the fourth P.L. 94-142 provision adopted under P.L. 89-313, states that the commissioner may withhold payments available under section 2771 for a recipient's failure to comply with the requirements of P.L. 94-142. It is interesting that the commissioner shall withhold payments under P.L. 94-142 for noncompliance while it is discretionary if a recipient of funds under other federal programs, including section 2771 or P.L. 89-313, fails to comply with P.L. 94-142 requirements. 20 U.S.C. § 1416(a)(1)(A) and (B). In addition, I note that in funding a program under P.L. 94-142 children counted for P.L. 89-313 funds may not be counted for funds to be received under P.L. 94-142. See 45 C.F.R. § 116b.46. However, children counted under P.L. 89-313 may be served with P.L. 94-142 funds if the requirements of P.L. 94-142 are met, implying they need not be in all instances.
Having reviewed the applicable statutes and regulations I can understand the confusion which results in trying to enforce federal law regarding a free appropriate public education for handicapped children. Legislative history and agency interpretation of the provisions are no more helpful in defining what obligations P.L. 94-142 imposes upon recipients of P.L. 89-313 funds. The legislative history of Public Law 95-561, the reenactment of P.L. 89-313 codified at 20 U.S.C. §§ 2771 and 2772, indicates that congress considered but declined to fuse the two laws and their requirements. In commenting on P.L. 89-313 as reenacted, the house committee states in its report:
the committee also feels that now is not the time to try to re-shape this program when the closely-related general program to educate handicapped children (P.L. 94-142) is just now being implemented.
An amendment was offered to the P.L. 89-313 provisions of Title I which would have had the effect of placing 89-313 children under the Education of All Handicapped Children Act (P.L. 94-142) over a five year period so that there would be one law concerning the education of all handicapped children regardless of where they live or are educated. The idea in combining the two laws was to develop a uniform program of services and funding for all handicapped children. It was contended that because of the anticipated growth of the P.L. 94-142 appropriations by 1982 billions of new dollars should be available. Some concerns were also raised as to whether the 94-142 appropriations will grow fast enough to accommodate the merger, and the amendment was withdrawn.
The committee decided not to take any action at this time and has referred the matter to the Select Education Subcommittee of the Committee which has made a commitment to look at both P.L. 89-313 and P.L. 94-142 laws this year and determine what mechanism can be developed to bring equity between the two programs. If it is determined that the laws should be merged, the Committee will work out some mechanism for doing it and report a bill promptly to the full House.
H.R.Rep.No. 95-1137, 95th Cong., 2d Sess. 38-39, reprinted in [1978] U.S.Code Cong. & Ad.News 4971, 5008-5009. Apparently no revision or merger has been made by congress.
Plaintiffs contend that legislative history supports a finding that the P.L. 94-142 requirements are superimposed on those of P.L. 89-313. The Senate Conference Report regarding the receipt of P.L. 94-142 funds being conditioned upon compliance by other federally funded programs with its requirements stated:

*112 Other programs. The Senate bill and the House amendments require that each State set forth the policies and procedures by which it will assure that other Federal funds for the education of handicapped children will be used in a manner consistent with this Act (including funds under Title I (State operated programs) ...).
The House amendments, but not the Senate bill, provide that the funds shall only be used in a manner consistent with the goal of providing a free appropriate public education for all handicapped children.
The Senate recedes.
The Senate bill, but not the House amendments, provides that the provisions shall not be construed to limit specific requirements of laws governing such Federal programs.
The House recedes.
S.Conf.Rep.No. 94-455, 94th Cong., 1st Sess. 40, reprinted in [1975] U.S.Code Cong. & Ad.News 1480, 1493-1494. In the Supplementary Information accompanying the issuance of the P.L. 89-313 regulations in 1978, now codified at 45 C.F.R. §§ 116b et seq., the Office of Education stated:
The new part 121a [regulations under P.L. 94-142] imposes requirements on a State educational agency regarding treatment of handicapped children in a State receiving part B [P.L. 94-142] funds. These requirements benefit all handicapped children in the State, and are not limited to those children who have been counted or served under part B. The State educational agency is responsible for implementing those requirements regarding handicapped children eligible for [P.L. 89-313] benefits. These requirements include those activities relating to location, identification, and evaluation of handicapped children, development of an individualized education program, confidentiality of data, timelines relating to the provision of a free appropriate public education (and what services must be provided at no cost to parents under a free appropriate public education), development of a full education opportunity goal, placement, least restrictive environment, procedural safeguards, priorities in educating handicapped children, and parental participation. Due to the importance of the part 121a requirements for those involved in [P.L. 89-313] programs, the Office of Education urges that close attention be paid to that regulation. Subpart H of the new part 116b [regulations under P.L. 89-313] cross-references those statutory requirements of part B of the Education of the Handicapped Act which effect the operation of programs under [P.L. 89-313].
But for the last sentence in the supplemental information, it would appear that the P.L. 94-142 regulations apply in toto to P.L. 89-313 programs. A Bureau of Education for the Handicapped Policy Paper, cited by plaintiffs, supports this position nonetheless:
Question: What is the relationship of P.L. 89-313 to Part B of EHA [P.L. 94-142]?
Answer: The SEA (State Education Agency) must assure under Part B of EHA that (1) the requirements of Part B of EHA are met and (2) that all handicapped children within the Part B mandated age ranges and timetables (including P.L. 89-313 children) receive all of the protections of Part B....
DAS Bulletin No. 41, as amended by DAS Bulletin No. 52, dated January, 1980. Further, plaintiffs refer to the comment to 45 C.F.R. § 121a.2 which states:
The requirements of this part [under P.L. 94-142] are binding on each public agency that has direct or delegated authority to provide special education and related services in a state that receives funds under Part B of the Act, regardless of whether that agency is receiving funds under Part B.
It is obvious that congress' failure to resolve the conflicting requirements apparent in the two laws frustrates the abilities of a state educational agency or local educational agency to meet its obligations to provide handicapped children with an appropriate free education with the use of federal *113 funds. However, I recognize that although the specific regulations may differ functionally, P.L. 94-142 imposes upon P.L. 89-313 recipients at least the broad requirements that its educational program be supervised by the state educational agency, its educational programs be consistent with the provision of a "free appropriate public education," and its educational programs meet the state educational standards. Most importantly, regardless of what a P.L. 89-313 recipient must do functionally to provide a free appropriate public education to handicapped children, P.L. 94-142 imposes upon the state educational agency an obligation to assure that all handicapped children, including those placed in facilities like Ridge home, be provided a free appropriate public education. 20 U.S.C. § 1412(1). Case law indicates that all children within the state who are handicapped acquire the broad P.L. 94-142 rights or entitlements once the state receives funds under the act, see, e. g., Battle v. Commonwealth of Pennsylvania, 629 F.2d 269, 270 (3d Cir. 1980), Springdale School Dist. v. Grace, 494 F.Supp. 266, 268-269 (W.D.Ark.1980), Harris v. Campbell, 472 F.Supp. 51, 53 (E.D.Va.1979), and that the state educational agency or the commissioner of the state agency has the ultimate responsibility in assuring such, see, e. g., Hines v. Pitt County Board of Education, 497 F.Supp. 403, 406 (E.D.N.C.1980), Kruelle v. Biggs, 489 F.Supp. 169, 174 (D.Del.1980), aff'd, 642 F.2d 687 (3d Cir. 1981).
Defendants' argument misses the mark by asserting that plaintiffs fail to state a claim under P.L. 94-142 in this action. Plaintiffs seek declaratory and injunctive relief against the Commissioner of the Colorado Department of Education and the Department to assure that a free appropriate public education is provided to them, whether at Ridge or in the local public schools in Jefferson County or in their parent's residential counties. Upon receiving P.L. 94-142 funds the commissioner and department have the responsibility regarding all handicapped children within the state. It is their responsibility to resolve any conflicts between the P.L. 94-142 requirements and the P.L. 89-313 requirements in such way as to assure that a free appropriate public education is provided to the plaintiff children and that procedural safeguards are afforded. This conclusion is consistent with the goals of P.L. 94-142 and the specific requirements under both statutes. 20 U.S.C. §§ 1412(1), 1412(6), 1413(a)(2), 45 C.F.R. §§ 121a.2, 121a.138, 116b.70, et seq. Accordingly, defendants' motions to dismiss for failure to state a claim and for summary judgment on this issue are denied.
I note also in considering defendants' motion for summary judgment that their assertion that plaintiff children are indirect recipients of P.L. 89-313 funds receiving only P.L. 89-313 protections is not sufficiently supported by the facts to rule in their favor at this time. The individually named plaintiffs allege that they are not served with P.L. 89-313 funds nor are approximately fifteen to thirty per cent of the members of the plaintiff class. Defendants' responses to interrogatories indicate that not all of Ridge's residents are counted for purposes of receiving P.L. 89-313 funds. Therefore a question of fact remains regarding which specific statutory requirements apply. Nonetheless, a failure to comply with either statute may be a violation of P.L. 94-142. I conclude that plaintiffs have stated a claim under P.L. 94-142 and the motion to dismiss or for summary judgment is denied on this ground as well.

EXHAUSTION OF ADMINISTRATIVE REMEDIES
Defendants argue that plaintiffs have failed to exhaust their administrative remedies under both P.L. 89-313 and P.L. 94-142. Title I of the Elementary and Secondary Education Act, of which P.L. 89-313 is a portion, provides procedures under which plaintiffs may contest practices which violate Title I. 20 U.S.C. §§ 2738, 2815, 2834. Three avenues for relief are created: local educational agency review of complaints made by parent advisory councils, parents, teachers, or other concerned organizations or individuals, 20 U.S.C. *114 § 2738; appeal or direct complaint to the state educational agency, 20 U.S.C. § 2815; and appeal or direct complaint to the Commissioner of Education, 20 U.S.C. § 2834. P.L. 94-142 provides that parents or a guardian should be given the opportunity to present a complaint regarding their handicapped child's educational plan. 20 U.S.C. § 1415(b)(1)(E). When a complaint is made, the parents or guardian are entitled to an impartial due process hearing, conducted by a hearing examiner unrelated to the local educational agency or by the state educational agency. 20 U.S.C. § 1415(b)(2). Any decision made by a hearing examiner at the local level may be appealed to the state agency. 20 U.S.C. § 1415(c). Any party aggrieved by a decision at the state level has a right to judicial review in a state or federal district court. 20 U.S.C. § 1415(e)(2).
Plaintiffs allege that three of the named plaintiffs exhausted the first two available remedies of either P.L. 89-313 and P.L. 94-142. Plaintiffs also allege that appeal to the commissioner under 20 U.S.C. § 2834 is inapplicable as the only remedy available is withdrawal of federal funds, a remedy not sought here. See Cannon v. University of Chicago, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). I find that plaintiffs have sufficiently attempted to exhaust their administrative remedies under the statutes and that further attempts would be futile.
In June, 1979, plaintiff Estevan Solis' parents requested educational services from the Weld County Board of Cooperative Services, the local educational agency located in his parents' residential county. Estevan is an 11 year old child who is handicapped due to mental retardation and physical disabilities. According to the complaint, Estevan lives at Ridge, where he was placed April 7, 1977, when he was eight years of age. He was so placed because of his need for specialized 24 hour residential care resulting from his physical and mental handicaps. His parents assert his special education and related services needs include a full day program of education for trainable mentally retarded children, physical therapy, occupational therapy, communication skills including speech therapy and language development and use of a communication board, self-help skills including feeding and toileting, music therapy, socialization skills, adaptive equipment including an appropriately designed wheelchair, individual and small group instruction, relaxation techniques, and recreational activities including swimming.
The Weld BOCES conducted an educational assessment of Estevan and concluded he was handicapped and in need of special education and related services. However, since Estevan lived at Ridge, the Weld BOCES allegedly refused and continues to refuse to provide services to him. In November, 1979, Estevan's parents made a demand upon Jefferson County Public Schools, where Ridge is located, to provide Estevan with a free appropriate public education. Jefferson County allegedly refused and continues to refuse to serve Estevan because his parents reside in Weld County.
Estevan's parents appealed the refusal to serve by the Weld BOCES and demanded a hearing as provided by 45 C.F.R. § 121a.506. They also demanded that interim special education and related services be provided during the pendency of their appeal, as provided by 45 C.F.R. § 121a.513. On December 12, 1979, they were advised by a representative of the local education agency that their demand for a hearing was refused. On December 13, 1979, pursuant to 45 C.F.R. § 121a.510, Estevan's parents appealed to the state educational agency and the commissioner the denial of a hearing and failure to provide interim services. They requested that defendants assure that some local educational agency provide the services or that the state educational agency provide the services. On December 20, 1979, the state educational agency and commissioner affirmed the denials, without offering Estevan or his parents a hearing.
Plaintiff Timothy Clare is a 16 year old child who is mentally retarded and deaf. He has lived at Ridge since February, 1972, when he was placed there due to his need *115 for 24 hour specialized residential care. His parents also live in Weld County. According to the complaint, Timothy's special education and related services needs include a full day combined deaf education-trainable mentally retarded education program, intensive total communication system including sign language, pre-school training program, pre-vocational training program, community experience and relation, occupational therapy, recreational therapy including swimming, a structured educational setting with one-to-one attention at all times, and an intensive behavior management program.
In October, 1979, his parents made a demand upon the Weld BOCES to provide Timothy with a free appropriate public education. A special assessment was conducted but again, the Weld BOCES refused to provide services to a Ridge resident. In November, 1979, his parents requested the same from Jefferson County which also refused to provide the services. Timothy's parents appealed the Weld County decision and requested interim services, both of which were denied on December 12, 1979. On December 13, 1979, Timothy's parents appealed to the state. On December 20, 1979, the defendants summarily affirmed the denials.
Amy Becker is a ten year old handicapped child who is mentally retarded. She was placed in Ridge on April 3, 1974 due to her extensive special needs resulting from her severe handicap. Her parents live within the boundaries of the Denver Public Schools, in Denver, Colorado. Amy's special education and related services needs include a full day program of education for trainable mentally retarded children and a language oriented environment, speech therapy including a usable communication system, music therapy, occupational therapy, physical therapy, recreation therapy including swimming, self-help skills including dressing and hygiene, one-to-one instruction, socialization skills including appropriate peer and adult interaction and a highly structured and organized behavior management system.
In September, 1979, Amy's parents made a demand upon Denver Public Schools to provide Amy with a free appropriate public education. The demand was refused on the basis that Amy lived at Ridge. In October of 1979, Amy's parents made a demand upon the Jefferson County School District to provide Amy with a free appropriate public education. This demand was refused because Amy's parents reside in Denver. In October, 1979, a complaint was filed with the defendants pursuant to 45 C.F.R. § 121a.602 alleging that Amy was denied a free appropriate public education. The complaint requested that defendants assure that some local education agency provide special education and related educational services, including interim services. According to the complaint, defendants did not take any action, set no hearings and issued no rulings pursuant to the complaint. Nonetheless, it is my understanding, based upon representations made in plaintiffs' opposition brief to the motion to dismiss, that Amy is currently being served by some public school while residing at Ridge.
Plaintiffs Russell Langren and Walter Philip Hilton apparently tried no administrative review procedure. Russell is a six year old child who is handicapped due to autism. He has resided at Ridge since November 5, 1978. His parents live in Otero County within the boundaries of the Arkansas Valley Board of Cooperative Services. His special education and related services needs include a pre-school program of education for autistic children, speech therapy, occupational therapy, and recreational therapy. On February 26, 1980, his parents made a demand upon the Arkansas Valley BOCES to provide Russell with a free appropriate public education. That demand was refused on the basis that Russell lived at Ridge.
Plaintiff Walter Hilton is a 19 year old child who is disabled due to mental retardation and physical disabilities. He has lived at Ridge since August 21, 1967, when he was seven years of age. His parents live in Boulder, Colorado, within the boundaries of the Boulder Valley Public Schools. Walter's *116 special education and related services needs include a full day program of education for mentally retarded children, speech/language therapy including a usable communication system, music therapy, occupational therapy, physical therapy, recreation therapy including swimming, self-help skills including daily living skills, socialization skills including appropriate peer and adult interaction, pre-vocational training program, and a structured behavior management system. The complaint alleges he is not receiving a free appropriate public education. Apparently no demand has been made by Walter's parents to any local educational agency to provide the services. I note, however, that plaintiffs seek to bring this action as a class action consisting of approximately 300 members.
Defendants contend that contrary to plaintiffs' assertions, extensive efforts were taken to provide educational services for at least plaintiffs Solis, Clare and Becker. By affidavit, Edwin E. Steinbrecher, Assistant Commissioner of Education of the Colorado Department of Education, asserted that in late November, 1979, the department held a meeting to discuss the situation with representatives of the children, representatives of the school districts in which the parents reside, representatives of Ridge, representatives of Jefferson County Public Schools, and representatives of the department. After the meeting, the department sought to establish and coordinate an effort by which the three children's conditions could be assessed, their educational needs determined, a plan could be established for each child and an appropriate education provided. During the week of November 26, 1979 Steinbrecher asserts a team consisting of a facilitator, teacher, department representative, social worker, therapy assistant for Ridge, physical therapist, nurse practitioner, psychologist, and a speech/language specialist was formed to make the necessary evaluations.
The team met initially on December 7, 1979, to establish procedures according to Steinbrecher. On December 14, 1979, the team met to review the children's records which had been compiled by the staff at Ridge. The team also observed the three children. Pre-assessment meetings to review and discuss the contents of the Ridge records were held on December 19 and 21, 1979. Requests were sent to parents for permission to make assessments. From January 14-18, the assessment team observed the three children for assessment purposes.
On February 6, 1980, one child, not identified in the affidavit, was scheduled for a hearing examination at Colorado General Hospital. On February 22, 1980, the assessment team met with representatives of the child, staffing chairman, representatives of the department, a representative at Ridge, teacher, social worker, the Legal Center for the Handicapped, physical therapist, school nurse, psychologist, speech/language specialist and parent to discuss the assessment results and to plan a program of education for the child. On February 29, 1980 additional staffings were held for the same purpose.
On March 14, 1980, the final reports of the committees involved in the assessment and staffing of the three children were completed. On March 20, 1980, the Commissioner of Education informed the local district of the child's parents' residence to assume responsibility for and to provide educational services for the three children if requested to do so by the children.
On or about April 1, 1980, the Denver Public School system indicated it would provide educational services to Amy Becker upon her request. After some preliminary contact with the child, Denver determined that it wished to reassess the child in some areas of functioning. About May 15, 1980, Denver indicated this to the parents and on June 3, 1980, held a staffing. On June 4, 1980, representatives of the child contested the results of that staffing. In June, 1980, another reassessment was completed. On July 2, 1980, the child's staffing was continued and an educational program was designed for the child. Plaintiff's mother, Carole Becker, however, averred by affidavit that subsequent to the meeting no appropriate *117 summer school or other educational services were offered as of August 19, 1980. It is my understanding that since that time Amy has been attending classes in the Denver public school system.
According to Steinbrecher, on or about April 28, 1980, Estevan Solis and Timothy Clare were offered a program to provide educational services by the local school district. The educational program would be provided by agreement of the Weld and Denver Community Center Board. However, by affidavit, plaintiffs Solis' and Clare's mothers indicated that only the February 22, 1980 staffing was held, that no educational opportunities were provided thereafter, and that none had been offered as of August 18, 1980. In addition, at the August and October, 1980, hearings plaintiffs' counsel indicated to me that no services had been provided or were being provided to plaintiffs Solis and Clare or to the other residents at Ridge. Regarding plaintiffs Langren and Hilton, Steinbrecher asserted the department had received no communication regarding their educational services as of July 9, 1980.
Defendants concede that the prescribed statutory procedure at the local or state level was not followed. However, they maintain the state's involvement and commencement of action regarding the plaintiffs' complaints were of more benefit. Further, defendants now assert that if plaintiffs are presently dissatisfied with the results of the numerous actions taken by defendants, they have the opportunity to raise such concerns in due process hearings at the local and state level.
Plaintiffs disagree with defendants' characterization of their own actions and allege that further pursuance of administrative measures to obtain educational services for the plaintiffs would be futile. Specifically, they maintain that the defendants' policy, as evidenced by its action, is that children at Ridge are not covered by P.L. 94-142 and not entitled to its substantive and procedural rights. Therefore, exhaustion of the administrative process for all of the approximately 300 children would be futile.
In construing P.L. 94-142, the courts consistently hold that exhaustion of administrative remedies is not necessary where such would be ineffectual or futile. See Armstrong v. Kline, 476 F.Supp. 583, 601-602 (E.D.Pa.1979), aff'd in part sub nom., Battle v. Commonwealth of Pennsylvania, 629 F.2d 269 (3d Cir. 1980), Medley v. Ginsberg, 492 F.Supp. 1294, 1309 (S.D.W.Va. 1980), Monahan v. Nebraska, 491 F.Supp. 1074, 1087 (D.Neb.1980), Sherry v. New York State Education Dept., 479 F.Supp. 1328, 1333 (W.D.N.Y.1979), Harris v. Campbell, 472 F.Supp. 51, 54 (E.D.Va.1979), Loughran v. Flanders, 470 F.Supp. 110, 112 (D.Conn.1979). See generally McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1979). Judicial interpretation of this issue is buttressed by the legislative history of P.L. 94-142. In addressing the Senate during its debate on the conference report on P.L. 94-142, Senator Williams, author of the Senate bill and Chairman of the Labor and Public Welfare Committee, explained:
Mr. President, with regard to complaints, I want to underscore that exhaustion of the administrative procedures established under this part should not be required for any individual complaint filing a judicial action in cases where such exhaustion would be futile either as a legal or practical matter. Nor is it intended that the availability of these administrative procedures be construed so as to require each member of the class to exhaust such procedures in any class action brought to redress an alleged violation of the statute.
121 Cong.Rec. 37416 (1975).
Defendants analogize their behavior to that in Harris where the court ruled that because extensive efforts had been made to provide the emotionally disturbed plaintiff with a free appropriate public education, exhaustion would not be futile. Harris v. Campbell, 472 F.Supp. at 54. However, in Harris the parents had not initiated any administrative proceedings. Although defendants have apparently made some good faith efforts, plaintiffs are correct in their *118 assertion that the pattern and practice regarding handicapped children at Ridge does not provide the procedural and substantive rights afforded by P.L. 94-142. Defendants' actions are more analogous to the iron-clad procedures practiced in Armstrong v. Kline, 476 F.Supp. at 601-602, and Monahan v. Nebraska, 491 F.Supp. at 1087, which prompted the courts to find exhaustion to be futile.
In Armstrong the state department of education arbitrarily applied a 180-day instruction period rule to all students regardless of the special needs of handicapped children and required hearing officers in the P.L. 94-142 procedure to adhere to the rule. The Court of Appeals agreed that the 180-day rule could not be upheld because it was inconsistent with P.L. 94-142's emphasis on individualized educational planning. Battle v. Commonwealth of Pennsylvania, 629 F.2d at 276. In Monahan, the hearing officers in the P.L. 94-142 procedure were bound to apply the state-mandated procedure which, unlike federal regulations, did not provide parents with a due process hearing that was impartial. Specifically the state commissioner's power to review and reverse the hearing officer's decision prevented the state hearing from being impartial.
The grant of jurisdiction under 20 U.S.C. § 1415(e) empowers me not only to review a placement decision or decision regarding an educational plan but also to determine whether the state procedure denies the plaintiff procedural rights under P.L. 94-142. Monahan v. Nebraska, 491 F.Supp. at 1087, Loughran v. Flanders, 470 F.Supp. at 113. I find that plaintiffs have sufficiently alleged denial of their substantive rights and procedural rights and that further pursuit of administrative procedures, which at the earliest were initiated in June, 1979, would be futile. As the district court stated in Sherry v. New York State Education Dept., 479 F.Supp. at 1333, "a person who claims that the state defendants have not even provided the impartial hearing as required by federal law a fortiori asserts a claim over which this court has jurisdiction." Although I agree that the detailed procedures under either P.L. 94-142 or P.L. 89-313 for evaluation and determination of a child's educational needs could best be handled by state and local educational agencies, and that courts are not necessarily equipped to make educational decisions, see San Antonio School Dist. v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), I cannot refrain from exercising jurisdiction to review these matters where the state has failed to meet its obligations under federal law. Therefore, defendants motion to dismiss or for summary judgment on the grounds of exhaustion is denied.

SECTION 504 OF THE REHABILITATION ACT
Plaintiffs allege a violation of section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, which provides:
No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....
Plaintiffs allege that due to their handicaps which result in their living at Ridge, they are being denied a free appropriate public education comparable to that received by non-handicapped children.
Defendants assert in their motion to dismiss or for summary judgment that plaintiffs have failed to state a claim under section 504. They argue that in order for plaintiffs to state a claim they must allege that non-handicapped children are in fact receiving such an education and prove such to prevail on the claim. This argument was advanced and rejected recently in New Mexico Ass'n for Retarded Citizens v. New Mexico, 495 F.Supp. 391 (D.N.M.1980), in which allegations similar to those in this case were made. There, Judge Mechem recognized that section 504 is the codification of a guarantee of equal protection for handicapped persons and emphasized that identification of a class of persons against *119 whom discriminatory practices may be measured is not an essential element to a claim of discrimination based on handicap. Id. at 396. He made the analysis that "[a] Black who brings a claim of racial discrimination, whether under the Fourteenth Amendment or the Civil Rights Act, need not prove as an essential element of the claim that White persons have not been subject to the same discrimination." Id. He concluded that the presumption is "that normal school age children are provided with adequate educational services appropriate to their needs. The obligation to rebut this presumption [is with the defendants]. Absent evidence in that light, the presumption will be accepted as fact." I agree with Judge Mechem's analysis.
Defendants also argue that they are not properly the subject of suit because they do not operate a school system. A similar argument was also rejected in the New Mexico Ass'n for Retarded Citizens case. Id. at 396-397. The Colorado Department of Education receives federal funds which are distributed to local educational agencies to operate school systems. The department also has assured compliance with section 504, as well as P.L. 94-142 and P.L. 89-313, in accepting federal funds. The Colorado State Plan states:
The programs assisted under Part B of the Act [P.L. 94-142] and Public Law 89-313 will be operated in compliance with Section 504 of the Rehabilitation Act of 1973 and its implementing regulations, Title 45 of the Code of Federal Regulations, Part 84 (non-discrimination on the Basis of Handicap in Programs and Activities Receiving or Benefiting from Federal Financial Assistance).
Colorado's Fiscal Year 1980 Annual Program Plan Amendment for Part B of the Education of the Handicapped Act as amended by Public Law 94-142, at page 3. Defendants are "recipients" within the meaning of the definition at 45 C.F.R. § 84.3(f)[1] and they are the bearers of the responsibility of assuring non-discrimination on the basis of handicap as specified in 45 C.F.R. § 84.4.[2] Therefore, I conclude *120 they are properly subject to this suit pursuant to section 504.
Plaintiffs have based their claim on a violation of section 504 without any particular reference to the regulations promulgated thereunder. I note, however, that the regulations require that every handicapped individual be provided with an appropriate education by recipients of federal funds. An "appropriate education" is the "provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons...." 45 C.F.R. § 84.33(b). This education requirement closely parallels that of P.L. 94-142, however, the regulations note that implementation of an individualized education plan is only one means of meeting this standard.
Section 84.34 of the regulations provides that a recipient provide for education for a handicapped individual in the least restrictive setting possible. Section 84.35, dealing with evaluation and placement, requires that testing be administered by adequately trained personnel and that tests with more than a single intelligence quotient be used. In making placement decisions no one criterion or single person's opinion is to be decisive. Section 84.36 requires recipients of federal funds to establish and implement procedural safeguards including "notice, an opportunity for parents or guardian of the person to examine relevant records, an impartial hearing with opportunity for participation by the person's parents or guardian, representation by counsel, and a review procedure." Again, the regulations provide that compliance with procedural safeguards may be met by compliance with P.L. 94-142 procedures. 45 C.F.R. § 84.35.
Defendants challenge the regulations under Subpart D  Preschool, Elementary, and Secondary Education, 45 C.F.R. §§ 84.31-84.48, as too expansive under the non-discrimination mandate of section 504. Indeed, since before their promulgation, the regulations have been subject to controversy. After the enactment of section 504, the Department of Health, Education, and Welfare, now the Department of Health and Human Services, failed to promulgate regulations. The statute contained no express provision requiring rulemaking. In a suit against HEW, however, the United States District Court for the District of Columbia held that congress had intended regulations to be issued and ordered HEW to do so. See Cherry v. Mathews, 419 F.Supp. 922 (D.D.C.1976). In Cherry the court recognized that section 504 was not intended to be self-executing. Id. at 924. Accord Doe v. Colautti, 454 F.Supp. 621, 629 (E.D.Pa. 1978), aff'd 592 F.2d 704 (3d Cir. 1979); NAACP v. Wilmington Medical Center, Inc., 453 F.Supp. 280, 297-298 (D.Del.1978), rev'd on other grounds, 599 F.2d 1247 (3d Cir. 1979). Although finding no express rulemaking requirement, the court in Cherry relied upon the legislative history of the 1974 amendments to section 504 to conclude that "Congress contemplated swift implementation of section 504 through a comprehensive set of regulations." 419 F.Supp. at 924. See S.Rep.No. 1139, 93d Cong., 2d Sess. 24-25 (1974); H.R.Rep.No. 1457, 93d Cong., 2d Sess. 27-28 (1974) (Conference Report); S.Rep. 1297, 93d Cong., 2d Sess. 39-40, reprinted in [1974] U.S. Code Cong. & Ad. News 6373, 6391.
On April 28, 1976, Executive Order 11,914, 41 Fed.Reg. 17,871 (1976), was issued requiring HEW and other federal agencies responsible for disbursing federal funds
to adopt rules, regulations and orders to ensure that recipients of federal aid are in compliance with Section 504. If compliance cannot be secured voluntarily, it may be compelled by suspension of termination of federal assistance after a hearing or by "other appropriate means authorized by law." HEW is given the responsibility of establishing standards for who are "handicapped individuals" and for determining what are "discriminatory practices" as well as coordinating the implementation of Section 504 by all federal agencies.
Id. quoted in NAACP v. Wilmington Medical Center, Inc., 453 F.Supp. at 298. In NAACP the court characterized the executive order as the functional equivalent of a *121 statutory provision requiring rulemaking. Id. On May 4, 1977, HEW issued final regulations implementing section 504. 42 Fed.Reg. 22,676-22,694 (1977). They became effective on June 3, 1977.
Since their promulgation, the weight to be given the section 504 regulations has been in question. Because HEW was ordered to promulgate them the Supreme Court in Southeastern Community College v. Davis, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979), indicated the deference normally given to agency interpretation of a statute is substantially diminished. Id. at 411-412 n.11, 99 S.Ct. at 2370 n.11. The court suggested that because the subsequent declarations of congressional intent by members of congress and congressional committees regarding regulation were not subsequent "legislation" as in Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 380-381, 89 S.Ct. 1794, 1801-1802, 23 L.Ed.2d 371 (1969), the remarks in the Congressional Record and congressional committee reports regarding the 1974 Amendments to the Rehabilitation Act bear less weight in construing the earlier enactment. The court emphasized that such declarations cannot be substituted for a clear expression of legislative intent at the time of the enactment. Southeastern Community College v. Davis, 442 U.S. at 411 n.11, 99 S.Ct. at 2370 n.11. However, the case here is that a clear congressional intent regarding whether regulations should or should not be promulgated was not manifested by the legislative history at the time of the enactment of section 504. NAACP v. Wilmington Medical Center, Inc., 453 F.Supp. at 297. See S.Rep.No. 93-318, 93d Cong., 1st Sess., reprinted in [1973] U.S. Code Cong. & Ad. News 2076, 2123. In contrast the Senate Report to the 1974 Amendments stated:
It is intended that sections 503 and 504 be administered in such a manner that a consistent, uniform, and effective Federal approach to discrimination against handicapped persons would result. Thus, Federal agencies and departments should cooperate in developing standards and policies so that there is a uniform, consistent Federal approach to these sections. The Secretary of the Department of Health, Education, and Welfare, because of that Department's experience in dealing with handicapped persons and with the elimination of discrimination in other areas, should assume responsibility for coordinating the section 504 enforcement effort and for establishing a coordinating mechanism with the Secretary of the Department of Labor to ensure a consistent approach to the implementation of section 503 and 504. The conferees fully expect that H.E.W.'s section 504 regulations should be completed by the close of this year. Delay beyond this point would be most unfortunate since the Act (P.L. 93-112) was enacted over one year ago  September 26, 1973.
The conferees noted, and the committee reiterates, that Executive Order No. 11758, section 2, delegates to the Secretary of Labor the responsibility for carrying out the responsibilities embodied in section 503 of the Rehabilitation Act of 1973, and similar delegation of responsibility to the Secretary of HEW is urged to carry out on a Government-wide basis those responsibilities embodied in section 504.
S.Rep. 1297, 93d Cong., 2d Sess. 39-40, reprinted in [1974] U.S. Code Cong. & Ad. News at 6391. Although congressional intent could be more illuminating, it is a fair inference to draw that agency interpretation through regulation is required and that some deference should be given to HEW's construction of section 504's requirements.
The primary question is the validity of the particular regulations applicable to this case. Essentially defendants attack the affirmative action nature of the regulations. As the court explained in Southeastern Community College v. Davis, 442 U.S. at 411, 99 S.Ct. at 2369, "neither the language, purpose, nor history of § 504 reveals an intent to impose an affirmative action obligation on all recipients of federal funds." See also Pennhurst State School v. Halderman, ___ U.S. ___, at ___, 101 S.Ct. 1531, at 1544, 67 L.Ed.2d 694 (1981). In Davis the court held that a professional *122 nursing school was not required to provide an auxiliary aid to a handicapped person with a serious hearing disability who was applying for admission to the nursing program. The court indicated first that the modification would not correct plaintiff's hearing ability to the extent necessary to make her qualified for the program. 442 U.S. at 409, 99 S.Ct. at 2368. In order to be an "otherwise qualified handicapped individual" under the meaning of section 504, the court indicated she would have to be qualified with or in spite of her handicap. Id. at 405, 99 S.Ct. at 2366. See Pushkin v. Regents of University of Colorado, 504 F.Supp. 1292, 1298 (D.Colo.1981). Second, the court stated the applicable regulations did not require the provision of such an aid or the curricular changes which would be necessary to aid the plaintiff. 442 U.S. at 409-410, 99 S.Ct. at 2368-2369. And finally, the court indicated that an interpretation that the regulations require such would be an impermissible expansion of the statutory requirements which did not contemplate substantial modifications in existing programs in order to facilitate handicapped persons. Id. at 410, 99 S.Ct. at 2369. The court concluded that section 504 imposes no requirement to lower or effectuate substantial modifications of standards to accommodate handicapped persons. Id. at 413, 99 S.Ct. at 2370.
Although the court in Davis indicated that substantial regulatory affirmative action might be beyond the scope of section 504's prohibition, it recognized that the "line between a lawful refusal to extend affirmative action and illegal discrimination against handicapped persons [is not] always clear," id. at 412, 99 S.Ct. at 2370, and that some modifications may be necessary to prevent discrimination, id. at 412-413, 99 S.Ct. at 2370. The prohibition against depriving handicapped persons of an equal opportunity to education necessarily will require differing treatment for handicapped children because of their special and unique needs. The courts have recognized this precept and have ruled accordingly in finding violations of section 504. See, e.g., S-1 v. Turlington, 635 F.2d 342 (5th Cir. 1981) (failure to afford educational services and procedural safeguards violation of § 504); Tatro v. Texas, 625 F.2d 557 (5th Cir. 1980) (failure to provide individualized education plan violation of § 504); Lora v. Board of Education of New York City, 456 F.Supp. 1211 (E.D.N.Y.1978), aff'd in part, 623 F.2d 248 (2d Cir. 1980) (inadequate educational services in special day schools for emotionally disturbed children violation of § 504); North v. District of Columbia Board of Education, 471 F.Supp. 136 (D.D.C.1979) (failure to provide appropriate education to multiply handicapped child violation of § 504); Howard v. Friendswood Independent School Dist., 454 F.Supp. 634 (S.D.Tex. 1978) (failure to provide educational and procedural safeguards to brain damaged-emotionally disturbed child violation of § 504). See also Camenisch v. University of Texas, 616 F.2d 127 (5th Cir. 1980), vacated as moot, 449 U.S. 1075, 101 S.Ct. 853, 66 L.Ed.2d 853 (1981) (failure to provide language interpreter violation of § 504).
Further, Davis is distinguishable from the facts of this case to the extent that it deals with the absence of a requirement to provide a substantial modification for a handicapped individual in a postsecondary educational program for which that person's handicap precluded her from ever realizing the benefits of that program. Cf. Pushkin v. Regents of University of Colorado, 504 F.Supp. 1292 (D.Colo.1981). The plaintiffs in this case, if provided with an appropriate education, can ostensibly benefit from educational services as can nonhandicapped persons. See Tatro v. Texas, 625 F.2d at 564. The primary question here is whether affirmative obligations in the form of substantive and procedural safeguards are consistent with and required by section 504 in the provision of equal educational opportunities to handicapped children. I think the answer is yes and the requirements embodied in the section 504 regulations regarding elementary and secondary education are not without the bounds of the statute's prohibition but rather bear a rational relationship to the statute's prohibition. Howard v. Friendswood *123 Independent School Dist., 454 F.Supp. at 640. A failure to provide an individualized education to handicapped children with their specialized needs would be tantamount to depriving them of an equal opportunity to education and would be a clear violation of section 504. Therefore, defendants motion for summary judgment or to dismiss on the grounds of invalidity of the statutory regulations is denied.
Defendants also point to the private school placement provision of the section 504 regulations, 45 C.F.R. § 84.33(c)(4), and allege that because plaintiffs are voluntarily placed in a private school the defendants as recipients are not financially obligated to pay for plaintiffs' education. Plaintiffs allege the provision is inapplicable. Without passing on whether Ridge is a "private school" within the meaning of the regulation, I note the provision is triggered only after an appropriate public education in conformance with sections 84.33 and 84.34 is made available by the recipient but is rejected by the parents or guardian who choose instead the private school placement. Such is not the case here. Because these facts remain to be ascertained at trial, defendants' allegation is inappropriate for summary disposition.
Finally, defendants allege plaintiffs have failed to exhaust administrative remedies under section 504. Plaintiffs seek declaratory and injunctive relief assuring them a free appropriate public education. The remedy provided for under section 504 is termination of federal funds. 45 C.F.R. § 84.61. The section 504 enforcement procedures were modeled after those of Title VI of the Civil Rights Act of 1964, 45 C.F.R. §§ 80.6-80.10, and Title IX of the Education Amendments of 1972, 45 C.F.R. § 86.71. In Cannon v. University of Chicago, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), the Supreme Court held that the exhaustion of Title IX administrative remedies is not required before one files a private action because the procedures do not afford individual complainants adequate relief. Id. at 706-08 n.41, 99 S.Ct. at 1962-1963 n.41. Where meaningful administrative remedies do not exist for the individual complainant exhaustion is not required; therefore exhaustion is not required in this action pursuant to section 504. See Kling v. County of Los Angeles, 633 F.2d 876, 879 (9th Cir. 1980); Gary B. v. Cronin, Civ.No. 79-C-5383 (W.D.Ill.1980); Whitaker v. Board of Higher Education, 461 F.Supp. 99 (E.D.N.Y. 1978). Cf. Doe v. Colautti, 454 F.Supp. 621 (E.D.Pa.1978), aff'd, 592 F.2d 704 (3d Cir. 1979); Crawford v. University of North Carolina, 440 F.Supp. 1047 (M.D.N.C.1977). I note in support of a finding that exhaustion is not required that an administrative complaint was filed on behalf of plaintiff Becker with HEW on October 15, 1979. As of August, 1980, no findings had been issued and no funds terminated. Defendants motion to dismiss or for summary judgment on the grounds of failure to exhaust administrative remedies is denied.

INDISPENSABLE PARTIES
Defendants move to dismiss or for summary judgment for failure to name indispensable parties pursuant to Rule 19 of the Federal Rules of Civil Procedure. Defendants claim the local school districts as well as the Colorado Department of Institutions should be joined in this action. The local school boards and boards of cooperative services, they assert, are responsible under state law for providing educational services within their districts. The Department of Institutions is the entity which controls and operates Ridge. Although these and other public agencies have an interest in the outcome of the litigation, I find that their joinder is not necessary. The state department of education is the appropriate party to be named and such is consistent with the intent of congress in requiring under P.L. 94-142 that one state entity, and one only, be ultimately responsible for educational services to handicapped children once the state receives federal funds. P.L. 94-142 requires that each participating state designate one single agency which will be responsible for "assuring that the requirements of [the Act] are carried out...." 20 U.S.C. § 1412(6), 45 C.F.R. *124 § 121a.600. The Senate Report explains the reasoning for this requirement:
This provision is included specifically to assure a single line of responsibility with regard to the education of handicapped children, and to assure that in the implementation of all provisions of this Act and in carrying out the right to education for handicapped children, the State educational agency shall be the responsible agency. Under other provisions of the Committee bill, funds paid to a State for other Federal programs which provide assistance for the education of handicapped children are required to be utilized by the State in a way which is designed to meet the timetables under this Act and the priorities established for serving handicapped children. The Committee expects that the chief State school officer of the State will take all steps necessary to assure the cooperation of other State educational agency personnel in carrying out this requirement.
The Committee considers the establishment of single agency responsibility for assuring the right to education of all handicapped children of paramount importance. Without this requirement, there is an abdication of responsibility for the education of handicapped children. Presently, in many States, responsibility is divided, depending upon the age of the handicapped child, sources of funding, and type of services delivered. While the Committee understands that different agencies may, in fact, deliver services, the responsibility must remain in a central agency overseeing the education of handicapped children, so that failure to deliver services or the violation of the rights of handicapped children is squarely the responsibility of one agency.
S.Rep.No. 94-168, 94th Cong., 1st Sess. 24, reprinted in [1975] U.S. Code Cong. & Ad. News 1425, 1448. Defendants have conceded that the state department of education is the agency so designated under P.L. 94-142. Further, the state plan assures compliance with the single agency requirement.
Regarding the section 504 and equal protection claims plaintiffs have chosen to name only the state department and the commissioner in this action. The state is a recipient under section 504 and is therefore prohibited from discriminating on the basis of handicap, either directly or through subrecipients. See 45 C.F.R. §§ 84.3(f) and 84.4. The state department is an appropriate subject for suit in an action under section 504 or the equal protection clause. In its state plan the defendants assure compliance with section 504 and its implementing regulations. Therefore, I see no need for the joinder of further parties. In making this determination I agree with plaintiffs that the wisdom of the single agency responsibility provision in P.L. 94-142 is crystallized by this case. The joinder of all involved local educational agencies within the state and the Department of Institutions, along with any other tangentially related public agencies, could transform a trial on the issues to a finger pointing contest among defendants regarding with whom the responsibility of educating handicapped children lies. Defendants motion to dismiss or for summary judgment on this issue is denied.

ESTOPPEL AND ABSTENTION
Defendants again allege plaintiffs are collaterally estopped in this action by a 1973 case, Colorado Ass'n for Retarded Citizens v. Colorado, Civ.No. 78-F-1183 (D.Colo.1978), in which Judge Finesilver abstained from deciding right to treatment issues in a class action suit. I rejected defendants' argument at hearing on August 19, 1980, and I again reject it. Under the elements announced by the Tenth Circuit Court of Appeals in Peffer v. Bennett, 523 F.2d 1323 (10th Cir. 1975), I conclude that the issues are not identical, there was no final judgment on the merits in the earlier case, the named plaintiffs in this case were not part of the class in the former,[3] and the *125 issues were not litigated at all in the former suit, much less "fully and fairly." In fact, the statutory right to a free appropriate public education under P.L. 94-142 was not alleged. Therefore, the motion to dismiss or for summary judgment on the grounds of collateral estoppel is denied.
Defendants do not again raise the issue of abstention. As I indicated in the August hearing, however, I decline to abstain. Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

CONCLUSION
Having reviewed all the issues set forth in defendants' motion to dismiss or for summary judgment, I hereby
ORDER that the motions are denied.
NOTES
[1] Section 84.3(f) defines a "recipient" as: any state or its political subdivision, any instrumentality of a state or its political subdivision, any public or private agency, institution, organization, or other entity, or any person to which Federal financial assistance is extended directly or through another recipient, including any successor, assignee, or transferee of a recipient, but excluding the ultimate beneficiary of the assistance.
[2] Section 84.4 provides specific requirements for assuring the broader requirement of non-discrimination as embodied in the express language of section 504. The section, in part, states:

(b)(1) A recipient, in providing any aid, benefit, or service, may not, directly or through contractual licensing, or other arrangements, on the basis of handicap:
(i) Deny a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit, or service;
(ii) Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;
(iii) Provide a qualified handicapped person with an aid, benefit, or service that is not as effective as that provided to others;
(iv) Provide different or separate aid, benefits, or services to handicapped persons or to any class of handicapped persons unless such action is necessary to provide qualified handicapped persons with aid, benefits, or services that are as effective as those provided to others;
(v) Aid or perpetuate discrimination against a qualified handicapped person by providing significant assistance to an agency, organization, or person that discriminates on the basis of handicap in providing any aid, benefit, or service to beneficiaries of the recipients program;
(vii) Otherwise limit a qualified handicapped person in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service.
(2) For purposes of this part, aids, benefits, and services, to be equally effective, are not required to produce the identical result or level of achievement for handicapped and nonhandicapped persons, but must afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs.
(3) Despite the existence of separate or different programs or activities provided in accordance with the part, a recipient may not deny a qualified handicapped person the opportunity to participate in such programs or activities that are not separate or different.
[3] Although the Association for Retarded Citizens and the Legal Center for Handicapped Citizens were parties to the former suit the named plaintiffs in this suit were not nor was the class action certified.