NEW MEXICO ASSOCIATION FOR RETARDED CITIZENS et al., Plaintiffs,

v.

The STATE OF NEW MEXICO et al., Defendants.

No. 75–633–M Civil.

United States District Court, D. New Mexico.

Jan. 8, 1980.

Shaffer, Butt, Thornton & Baehr, P. C., John A. Klecan, Matthews & Crider, P. C., Marian Matthews, Albuquerque, N. M., for plaintiffs.

Northern New Mexico Legal Services, Inc., Paul L. Bidderman, Anson B. Levitan, Clifford M. Rees, Santa Fe, N. M., Mark S. Jaffe, Bernalillo, N. M., for plaintiffs Arlene Smith and N. M. Association for Children with Learning Disabilities.

Jeff Bingaman, Atty. Gen., Robert N. Hilgendorf, Deputy Atty. Gen., John F. Kennedy, William B. McEuen, Asst. Attys. Gen., Santa Fe, N. M., Rodey, Dickason, Sloan, Akin & Robb, P. A., Duane C. Gilkey, Carl H. Esbeck, Albuquerque, N. M., for State defendants.

Botts & Cole, Robert W. Botts, Albuquerque, N. M., for defendants Board of Education of the City of Albuquerque, N. M. and its members.

MEMORANDUM OPINION AND ORDER

MECHEM, District Judge.

There having been a bench trial on the merits in this action in August, 1979, the following shall constitute the Findings of Fact and Conclusions of Law, pursuant to Rule 52 of the Federal Rules of Civil Procedure.

This class action suit was brought by several plaintiff-organizations and numerous individually named plaintiffs represented by their next friends against the State of New Mexico, several State agencies and their representatives and local public school districts and the members of their respective local school boards, seeking declaratory and injunctive relief from defendants' allegedly illegal conduct in failing to afford plaintiffs a free appropriate public education and related services as mandated by various New Mexico statutes, federal laws and federal Constitutional provisions. Subject matter jurisdiction based on 28 U.S.C. §§ 1331(a), 1343(3) and (4), and 2201 and 2202, is proper.

Plaintiff-organizations are the New Mexico Association for Retarded Citizens, the New Mexico Federation of Council for Exceptional Children and its University of New Mexico chapter, the New Mexico Association for Children with Learning Disabilities and the New Mexico Mental Health Association, all of which are non-profit New Mexico corporations interested in the provision of appropriate education and related services for exceptional children in the State of New Mexico. Several individually named plaintiffs by their next friends originally represented a plaintiff class which was certified by Memorandum Opinion and Order filed January 25, 1979. The class consists of all those handicapped children, aged 5 to 21, in the State of New Mexico, who have been or in the future may be diagnosed as handicapped, as that term is defined in 20 U.S.C. § 1401(1), and who claim they are not receiving a "free appropriate education" as that term is defined in 20 U.S.C. § 1401(18).[1]

Defendants remaining in this action are the State of New Mexico, the State Board of Education and its individual members, the Department of Education of the State of New Mexico, Leonard DeLayo, individually and as Superintendent of Public Education, Elie Gutierrez, individually and as Director of the Division of Special Education, A. L. Clemmons, Director of the Department of Finance, the Chief of the Public School Finance Division of the Department of Finance (collectively referred to as the State defendants), and the Albuquerque Public School District and the members of its Board of Education, individually and as members of the board (APS). The Governor of the State of New Mexico was dismissed as a party defendant by order entered January 19, 1977. Several other local public school districts and the Health and Social Services Department of the State of New Mexico and other state departmental agencies and their representatives have been dismissed during the course of this litigation by stipulation, settlement or order of the Court.

Plaintiffs' original Complaint embodied eleven counts. The Three-Judge District Court convened in this matter dismissed plaintiffs' state law claims for lack of jurisdiction and severed their federal Constitutional claims, staying action thereon pending resolution of plaintiffs' federal statutory claims, contained in Counts IV and V, by a one-judge district court. These are the claims presently before me.

■ Plaintiffs' amended Complaint, filed May 2, 1977, restated their claims under federal statutory law. Count IV alleges violations of the Education Amendments of 1974 to the Education of the Handicapped Act, 20 U.S.C. § 1401 *et seq.*, as amended. In Count V, plaintiffs claim alleged viola-

---

1. The Albuquerque Association for Gifted and Talented Students is also a named plaintiff-organization in this class action suit. However, because the class denominated expressly excludes exceptional children who are gifted and talented, as a result of the limited application of the federal statutes which form the basis for this aspect of plaintiffs' suit, it is assumed that the Albuquerque Association has not been an active participant in this phase of the litigation.

tions of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794. Plaintiffs seek declaratory judgment and injunctive relief on their federal statutory claims. Plaintiffs' Count IV claim was limited in scope by my Memorandum Opinion and Order, filed May 30, 1979, denying defendants' motion for summary judgment. Declining to dismiss Count IV as moot as was asserted by defendants, I therein limited the possible relief available to plaintiffs under Count IV to declaratory judgment for the period up to and including fiscal year 1977, which I now construe to be the year ending June 30, 1978, being the period in which the predecessors to the present act were in force. *See,* 20 U.S.C. § 1401 *et seq.,* P.L. 93–380, 91–230. The Act is a funding statute which was mandatory and not discretionary with the states prior to the enactment of Public Law 94–142, the effective date of which was October 1, 1977, and which superseded P.L. 93–380 (which in turn had superseded P.L. 91–230). Accordingly, the State of New Mexico, under Public Laws 93–380 and 91–230, participated in and received federal funds under the Act. A finding of noncompliance by the State during that period would render it subject to declaratory judgment. I conclude, however, that the discretionary nature of Public Law 94–142 frees the State to participate or not in the acquisition of federal funds under the Act as it chooses. Its choice not to participate is, without more, a governmental decision that, while not applauded by the parents and friends of those handicapped children within the State, is within the State's power and not subject to judicial inquiry.

Plaintiffs argue that notwithstanding the discretionary nature of participation in 94–142 funding, the State's failure to apply for federal funds under the Act, in light of its decision to apply for other federal funds for education, is discriminatory against handicapped children and therefore a violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. If the State's failure to participate in 94–142 is discriminatory, and I expressly reserve comment on that issue, it is more in the nature of a violation of plaintiffs' constitutional rights to equal protection, a claim which is not presently before me but has been stayed and will be heard by the Three-Judge District Court after resolution of plaintiffs' federal statutory claims.

■ Plaintiffs further assert that notwithstanding the discretionary nature of participation in 94–142, the State plan submitted to the United States Department of Health, Education and Welfare (HEW), pursuant to the requirements of Public Laws 91–230 and 93–380, constitutes a continuing obligation to seek federal funds and implement and attain the educational goals for which the plan was initially prepared. The theory that the State has a continuing obligation to seek federal funds to implement educational goals for handicapped children must fail in light of the Congressional amendment rendering the Act discretionary. Federal funding to the State under Public Laws 91–230 and 93–380 expired June 30, 1978. The State's plan under the Act expired at that time as well and absent a decision of the State to participate in a plan and acquire funds under 94–142, the State's obligation to implement educational goals pursuant to the federal funding statute ended when its plan and funding expired in June of 1978.

The issue remains, then, whether the State effected its plan under 91–230 and 93–380, prior to June 30, 1978, in compliance with the federal statute and the agency regulations promulgated thereunder. *See,* 45 CFR Part 121a. The State insists that HEW's approval of a final audit of the State's expenditure of funds received under 91–230 and 93–380 mandates a finding that the State acted in compliance with the Act prior to June, 1978 and that therefore declaratory judgment is unwarranted. While HEW approval of state expenditures may serve as one indicia of the State's compliance with the Act, inquiry cannot end there. Plaintiffs' exhibit 31, on which ruling was reserved at trial, is a copy of the State's annual program plan as amended for fiscal year 1975, submitted to HEW pursuant to Public Law 93–380. The exhibit will be admitted into evidence.

In all respects, the plan submitted by the State to HEW complies with the requirements for such plans as they are set out in the regulations pertaining to the Act. *See,* 45 CFR Part 121a, Subpart B. Plaintiffs' claim, however, is not that the plan itself was effected in non-compliance with the Act, but rather that the services mandated by the Act were not provided in compliance with the Act. *See,* 45 CFR Part 121a, Subpart C. Under Subpart C, the states were obligated to insure

> that free appropriate public education is available to all handicapped children aged three through eighteen within the State not later than September 1, 1978 . . . . 45 CFR 121a.300.

The regulations, recognizing that a substantial period of time would be required to initially implement provision of extensive education and related services for handicapped children, did not require that the States afford those services in their entirety to handicapped children within the State prior to September 1, 1978. I find, then, that because the State plan comports with the requirements of the Act and the regulations promulgated thereunder, and because the State was not obligated under the Act to provide full educational and related services to all handicapped children within the State until September 1, 1978, that the State and its local school districts, including APS, were substantially in compliance with the Act during the time prior to and including fiscal year 1977. In so holding, I find not that the State and its local school districts were doing their job with regard to providing educational services for handicapped during that time, but rather only that they were doing all that was required of them by the Act at that time. Whether defendants' actions, or failure to act, in providing appropriate educational and related services for the handicapped during that time violated federal constitutional or state statutory provisions are issues not before me and issues therefore which I necessarily do not reach. Count IV of plaintiffs' amended Complaint will be dismissed with prejudice.

Count V of the amended Complaint raises plaintiffs' claims that defendants are in violation of Section 504 of the Rehabilitation Act of 1973 (the Act), 29 U.S.C. § 794, and regulations promulgated thereunder, 45 CFR 84.1–.10, .31–.39 and .61. Section 504 reads

> No otherwise qualified handicapped individual in the United States, as defined in Section 706(7) of this title, [29 USC 706(7)], shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . .

Defendants are charged with discriminating against the plaintiff class by failing to provide those in the class with a free appropriate public education. 45 CFR 84.33. Defendants are alleged to have failed to provide an adequate and appropriate level of support services, such as speech and physical therapy, an adequate and appropriate number of diagnosticians necessary to fully and properly determine the educational needs of members of the class, to have failed to establish and enforce adequate and appropriate standards or procedures necessary to insure that those in the class are receiving the education to which they are entitled, to have failed to budget funds properly or budget funds sufficient to insure provision of a free appropriate public education for those in the class and, as to the state defendants, by employing a funding formula which does not lend itself to the provision of a free appropriate public education to those in the class. Defendants are also charged with failing to assure that qualified personnel are serving or available to serve plaintiffs.

In their defense, defendants raise initially jurisdictional questions. Defendants' claims of failure to exhaust administrative remedies and the doctrine of primary jurisdiction have been overruled by Order of this Court, May 30, 1979. In that same Opinion and Order, I held that there does exist a private right of action under Section 504, relying on *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560

(1979), *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), and *Davis v. Southwestern Community College*, 574 F.2d 1158 (4th Cir. 1978), rev'd on other grounds, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). Although defendants in their motion for summary judgment made immediately prior to trial contended otherwise, the Supreme Court declined to reach the issue of whether Section 504 provides a private action in reversing the Fourth Circuit in the *Davis* case. *Id.*, 442 U.S. at 404 n.5, 99 S.Ct. at 2366 n.5. The *Davis* case was reversed on the merits and is further distinguishable on its facts insofar as the issues therein were directed toward post-secondary educational programs. *Id.*

■ Nor does the recent Supreme Court decision in *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), lead me to alter my conclusion that a private right of action exists here. Indeed, the *Lewis* Court recognized that an implied private right of action may or may not exist depending on the relief sought. *Id.*, 444 U.S. at 21, 100 S.Ct. at 248. Plaintiffs in this action seek no damages but rather declaratory and injunctive relief. In an exhaustive opinion, the United States Court of Appeals for the Third Circuit has recently concluded that "a private cause of action is implicit in . . . § 504 of the Rehabilitation Act of 1973 for plaintiffs who seek declaratory and injunctive relief." *National Association for the Advancement of Colored People v. The Medical Center, Inc.*, 599 F.2d 1247, 1259 (3rd Cir. 1979). The legislative and judicial background on which the decision of the Third Circuit is based, adopted herein, provides ample reason to reaffirm my conclusion that a private right of action under § 504 exists in this case. *Id.; see also, Lloyd v. Regional Transportation Authority*, 548 F.2d 1277 (7th Cir. 1977); *Lau v. Nichols*, 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974).

■ The State defendants also claim that the organizational plaintiffs have no standing to sue and that the relief requested by plaintiffs is barred by the Eleventh Amendment to the United States Constitution and by State sovereign immunity. These defenses are patently frivolous and will be overruled. Also overruled is defendants' claim that because, allegedly, none of the named representatives of plaintiffs' class falls within the definition of the class, plaintiffs' case must be dismissed for failure to state a claim on which relief can be granted. Once certification of a class is granted, the success or failure of the individual claims of named plaintiffs is immaterial to the continued vitality of the claims of the class. Implicit in the State's argument is the factual claim that the individually named plaintiffs in this action were never subject to membership in the class and therefore could not ever have represented it. The fact that the class was certified renders the State's claim in the nature of a motion to reconsider certification of the class, which I decline to do.

■ The State claims further as a defense that because plaintiffs did not identify a class of persons against whom discriminatory practices may be measured plaintiffs have failed to allege an essential element to their claim. A Black who brings a claim of racial discrimination, whether under the Fourteenth Amendment or the Civil Rights Act, need not prove as an essential element of the claim that White persons have not been subject to the same discrimination. The situation is the same in this case. Section 504 has been characterized as a codification, on behalf of the handicapped, of the Constitutional right to equal protection. *Halderman v. Pennhurst State School and Hospital*, 446 F.Supp. 1295, 1323 (E.D.Pa. 1977). The presumption in this case has been, and is, that normal school age children are provided with adequate educational services appropriate to their needs. The obligation to rebut this presumption rested at trial with defendants. Absent evidence in that light, the presumption will be accepted as fact.

■ The State further claims that subsections .31 through .39 of 45 CFR Part 84 do not apply to it since the State does not "operate a public elementary or secondary

education program." 45 CFR 84.31. Although the State does not operate education programs in a literal sense, the regulations apply "to recipients . . . that receive . . . . Federal financial assistance for the operation of such [education] programs or activities." The State of New Mexico receives Federal financial assistance for education programs operating throughout the State. Admittedly education programs in New Mexico are operated at the local level. However, local school districts derive virtually their entire revenue from the State. Local school districts have extremely limited powers to raise revenues on their own. Clearly then, the State is a recipient which receives federal financial assistance for the operation, by whomever, of education programs in the State. The regulations promulgated under Section 504 apply to the State as well as to APS and the other local school districts in the State of New Mexico. And the regulations provide further basis for the conclusion that the State is subject thereto. *See,* 45 CFR 84.4(b)(1)(v), (b)(4)(iii).

Finally, the State's stiff necked, obstinate adherence to the premise that education is the responsibility of the local school districts within the State, pursuant to State law and regulations, is a fiction which I find totally unpersuasive based on the realities of pervasive state administrative and fiscal control over the operations of the eighty-eight local school districts within the State of New Mexico. In furtherance of this defense, the State's case at trial included a short course in governmental financing and budgeting. I am not persuaded, however, that absent close supervision, assistance and counseling by the appropriate State fiscal and education agencies, local school district personnel can appropriately budget so as to insure compliance with Section 504 in light of the State's determined control over the purse strings. The State may not be technically required to monitor compliance with Section 504. Its failure to insure compliance by the local school districts, however, implicates it under Section 504 insofar as the State's status as the recipient of federal financial assistance

obligates it not to permit, directly or indirectly, programs benefitting from federal financial assistance received by the State, to discriminate against handicapped persons within the context of the regulations promulgated under Section 504. 45 CFR 84.-4(b)(1)(v).

Evidence adduced at trial made it explicitly clear that discrimination against the handicapped does exist in local school districts throughout the State. Special education and related services, as those terms are defined in the regulations, *see,* 45 CFR 84.4, quite simply are not provided on an adequate basis to insure appropriate education to the handicapped. Occupational, physical and speech therapy was evidenced at trial as being inadequate almost uniformly throughout the State. And where such has been provided, it rarely has been absent the continued unflagging insistence of concerned parents. Indeed, it appears that often parents have been forced to secure independent therapeutic services for their children subject to reimbursement from the local school districts, who then claim, based on such reimbursement, that they are in fact providing the requisite services. Even in the Albuquerque Public Schools, which from the evidence is clearly the local school district doing its best to comply with Section 504 requirements, staffing and funding limitations render special education programs inadequate per Section 504. And while APS raised as a defense its inability to attract qualified personnel to provide such services, it was admitted that salary scales in New Mexico for such personnel are substantially lower than elsewhere and that higher salary levels would aid in securing the requisite personnel.

A note in the State's favor: Contrary to plaintiffs' claim that qualified personnel, as such, are not available to serve the class, I find that the strict qualifications required by State law of personnel servicing the handicapped in education insure quality services when they are in fact provided. However, the significant lack of the number of qualified personnel available to render services, as claimed by plaintiffs is,

unfortunately, all too true. Again, even APS, which at trial evidenced extensive efforts to attract personnel, lacks the numbers required to do the job. The lack of diagnosticians throughout the State impedes not only the accurate classification of children known to be handicapped, it limits the school districts' ability to find children in the community who, if diagnosed, would be found to be handicapped. These children too are members of the class and are to be located and served by the State, through the local school districts, and by APS in its own district. The testimony of Leonard DeLayo, Superintendent of Public Education, that all those handicapped children in the State have been located and are being served is far fetched.

APS and the State defendants have litigated this action like two tort defendants vigorously prosecuting the other's liability in order to escape judgment itself. By promulgating State regulations and standards concerning the provision of special education services in the State, as required by State law, State defendants insist that their obligation under Section 504 is complete. The tacit fallacy of this argument arises by considering the fact that the Superintendent of each of the eighty-eight local school districts in the State signed assurances to the State on forms provided by the State that their respective local school districts were in compliance with State laws and regulations concerning provision of services for special education. The evidence at trial indicated this is clearly not the case, yet the State would have me accept the State's requirement, and acceptance, of such assurances as satisfaction of its obligation to secure compliance by the local school districts. APS, on the other hand, suggests that if it is liable under Section 504 for non-compliance, the fault lies with the State for providing funding inadequate to provide the necessary services. APS' argument that it is doing the best it possibly can, given the severe fiscal restraints imposed by State fiscal policy, appears to be the better of the two, although still not enough for it to escape liability in this case. Testimony was adduced at trial that although APS is substantially in compliance with Section 504 requirements, it still fails to provide, for example, adequate and appropriate physical education and speech therapy necessary for education of the handicapped.

At this point it would be well to note that under Section 504 discrimination against the handicapped by recipients of federal financial assistance does not require a finding that any such discrimination is intentional. Unlike the school desegregation cases, it is the effect of a recipient's actions or lack thereof, directly or indirectly, which may constitute discrimination in violation of Section 504. Failure to adequately fund programs and personnel so as to secure compliance with Section 504 results in precisely the effect prohibited. So does the State's funding formula insofar as it permits local school districts to elect Option II funding for A/B special education programs. Convincing evidence at trial demonstrated that those local school districts electing Option II instead of Option I funding rendered substantially less special education services to their handicapped children. Local school districts electing Option II funding are not obliged by State law to establish A/B programs specifically, as are Option I districts. They are simply funded for A/B children on the basis of a weighing factor that has little or no relationship to the needs of the handicapped children within the district. The State's argument that Option II funding permits greater flexibility in smaller school districts is not persuasive. The Option II formula does appear to permit greater flexibility, not in the means by which special education services are provided, however, but rather in the uses to which the local district may put money funded for special education services, uses which need not necessarily be special education related. Because of the discriminatory effect of the funding formula as borne out in Option II districts, that being the substantially lesser services provided for special education in those districts, I conclude that the Option I/Option II funding formula is discriminatory in vio-

lation of Section 504. Based on the above violations of Section 504,[2] declaratory relief shall be granted plaintiffs on Count V of the amended Complaint.

Injunctive relief shall be granted on behalf of the plaintiff class to the effect that defendants be enjoined to provide the members of the class with a free appropriate public education as that term is defined by the regulations establishing compliance under Section 504. 45 CFR Part 84. Such injunction shall run against APS only as to those members of the class within APS' jurisdiction and against the State defendants as to all members of the class including those within APS' jurisdiction. Because the named individual plaintiffs whose claims were presented at trial are members of the class, injunctive relief shall run on their behalf as well and their individual claims need not be considered here.

Defendants shall bear their own costs. Plaintiffs, prevailing on Count V, shall be awarded their costs and attorneys' fees, pursuant to 29 U.S.C. § 794a(a)(2) and (b) and 42 U.S.C. § 1988, such costs and attorneys' fees to be borne in their entirety by the State defendants. Plaintiffs shall file a bill of costs with the Clerk of the Court in accordance with the rules of the Court. Opportunity for hearing on the matter of attorneys' fees shall be afforded within a reasonable time. Defendants shall have opportunity in due course to make any objections to plaintiffs' bill of costs and claimed attorneys' fees. In establishing costs and attorneys' fees, plaintiffs' attention is directed to *Northcross v. Bd. of Ed. of Memphis*, 611 F.2d 624 (6th Cir. 1979); *Wheeler v. Durham City Bd. of Ed.*, 585 F.2d 618 (4th Cir. 1978); and *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

Defendants shall submit within 45 days from the date of this Opinion and Order, for my approval, a plan to effect the requirements of injunctive relief as set out above.

Defendants shall consult with and consider recommendations of plaintiffs and their counsel in preparation of such a plan. Plaintiffs shall have opportunity to comment on any such proposed plan within a reasonable time after its submission for my consideration.

IT IS SO ORDERED.

---

**2.** Although I do not perceive claimed violations of the procedural safeguards established by defendants with regard to Section 504 compliance to be in issue here, if they were, I find defendants' system of procedural safeguards, developed pursuant to State law, to be not violative of Section 504.