935 F.2d 1179
 56 Fair Empl.Prac.Cas. 798,
56 Empl. Prac. Dec. P 40,893, 60 USLW 2064,
1 A.D. Cases 1814
 Paul SEVERINO, Plaintiff-Appellant,
v.
NORTH FORT MYERS FIRE CONTROL DISTRICT, Ray Alvarez,
personally, Ray Alvarez, officially as member of North Fort
Myers Fire Control Commission, Harry Deegan, personally,
Harry Deegan, officially, Hewitt Willis, personally, Hewitt
Willis, officially, Paul Lunger, personally, Paul Lunger,
officially, Bud Wooten, personally, Bud Wooten, officially,
Donald Brown, personally, Donald Brown, in his official
capacity as Chief of the North Fort Myers Fire Control
District, Defendants-Appellees.
 No. 90-3227.
 United States Court of Appeals,
Eleventh Circuit.
 July 12, 1991.
 
 Judith S. Kavanaugh, Trial Counsel, Kathleen D. Kirwin, Peeples, Earl and Blank, P.A., Sarasota, Fla., plaintiff-appellant.
 Gerald W. Pierce, Henderson, Franklin, Starnes & Holt, Fort Myers, Fla., for defendants-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before KRAVITCH and BIRCH, Circuit Judges, and DYER, Senior Circuit Judge.
 DYER, Senior Circuit Judge:
 
 
 1
 This is an appeal from an action seeking damages under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794[1]; 42 U.S.C. Sec. 1983; and the Florida Constitution, filed by an AIDS infected firefighter against the defendants. We determine that the denial of relief by the district court was correct, where the factual record failed to establish discrimination solely on the basis of the employee's handicap. The record more than sufficiently supports the result reached by the district court. Under each statutory and constitutional claim, we affirm the judgment in favor of the defendants.
 
 Facts
 
 2
 On November 27, 1987, Paul Severino was advised by a doctor at a blood bank that the blood he had donated tested HIV positive for AIDS. Based on the medical advice of Dr. Sanders that he should not perform rescue duties required by his job as a firefighter, Severino immediately tendered his resignation to Fire Chief Brown. The Chief arranged an alternative which provided him with insurance benefits and continued salary. Severino stayed on in the North Fort Myers Fire Control District and was assigned to "light duty" beginning on December 1, 1987. That work consisted of maintaining fire hydrants, dispatch duty, doing errands and going to the dump. Severino worked the "light duty," but complained about the work being demeaning. The working relationship between Chief Brown and Severino was worsening over this issue.
 
 
 3
 Severino began collecting medical and legal literature about AIDS. His new involvement in gathering information about AIDS and presenting it to the Fire District also led to his interest in a possible lawsuit. Severino said to a friend: "Before this case is over I am going to sue the hell out of somebody." Severino was also concerned that the AIDS infection could have occurred as a result of exposure to the disease connected to his work. He had begun working for the Fire District in June 1987; his disease was not contracted through this work, based on the period of incubation of the AIDS virus. He was put on 90-day medical leave with pay in March 1988. Acting Chief LaBelle temporarily took over Chief Brown's duties. On March 23, 1988, Severino presented a form to the Acting Chief that demanded that he be informed of his rights. He never returned to regular full-line duty. He did not present conclusive medical documentation of his ability to perform the rescue work as was requested, nor did he accept the offer to come back to work in any capacity. The District faced the situation where it would be paying a salary to Severino even though he did not accept the duties offered to him. Severino was terminated on May 24, 1988. The decision to take Severino off the payroll was made by LaBelle, after consulting with the Fire District's attorney. His health insurance coverage was paid by the District for 18 months beyond that time.Procedural History
 
 
 4
 Severino filed this action seeking relief under Section 504 of the Rehabilitation Act of 1973, as amended. He also alleged violations under 42 U.S.C. Sec. 1983 for deprivation of due process and equal protection, and the Florida Constitution for deprivation of rights because of physical handicap. The 10-count complaint sought declaratory and injunctive relief, as well as an award of compensatory and punitive damages, attorneys' fees and costs. The named defendants were the North Fort Myers Fire Control District, members of the North Fort Myers Fire Control Commission, in their personal and official capacities, and Donald Brown, personally and in his official capacity as Chief of the North Fort Myers Fire Control District.
 
 
 5
 The issues were narrowed before trial by the district court's rulings on motions and by voluntary dismissals by plaintiff. The court granted summary judgment dismissing the state and federal claims of denial of due process. The claims before the district court at the bench trial were the Section 504 claims against the Fire District and the Commissioners in their official capacities, and the equal protection claims against Chief Brown.
 
 Summary of the Trial Court's Findings
 
 6
 The court made findings with respect to Severino's personality as it was relevant to his credibility. The district court took into account the assessments of witnesses and counsel, and its own observations that Severino was aggressive, distrustful and a "lawsuit promoting" person. The view accepted by the court was that Severino instigated and took the initiative in all of the events which followed the discovery of his HIV positive status, including tendering his resignation. Based on all of the testimony, the defendants' version of the Fire District's dilemma of not knowing what to do other than fire Severino when he refused to work after an instance of insubordination, was found to be convincing. The court found that there was no intentional discrimination as the Fire District had tried to work out the problem for Severino's benefit. The termination was not solely on the basis of his AIDS condition; he was fired for reasons other than his handicap. The court also found that there was no causal connection between the one departure from the Regulations[2], in assigning Severino to "light duty" based on his handicap, and any harm to him under the statute. Concluding that there was no violation of Section 504, nor any other basis for relief, the district court entered judgment in favor of the defendants.
 
 Contentions
 
 7
 The adverse employment decisions which Severino asserts violated his statutory and constitutional rights were the reassignment to light duty, involuntary medical leave, and termination. He contends that the district court's findings were clearly erroneous with respect to his conduct and the motivation of the Fire District in making the adverse employment decisions. He contends that the district court erred in applying an incorrect legal standard to interpret discriminatory intent under Section 504[3] and determining that he was not entitled to compensatory damages under that section. Further, he contends that the district court erred in applying an incorrect legal standard to his equal protection claims. The final assertion of error is the court's holding that HIV infection is not a physical handicap under Article I, Section 2, of the Florida Constitution.Analysis
 
 
 8
 We are bound by the trial court's factual findings unless they are clearly erroneous. Cabriolet Porsche Audi v. American Honda Motor Co., 773 F.2d 1193, 1201 (11th Cir.1985) (citing Anderson v. City of Bessemer, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)), cert. denied, 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 186 (1986). The factual findings based on substantial, competent evidence that the Fire District was placed in the position of employing an AIDS-infected employee who could perform modified duties but who would not work satisfactorily under the conditions created by the District for his benefit, are not clearly erroneous. The modified duties were assigned as an accommodation to Severino whose health status enabled him to continue working with some restrictions to reduce the risk to his safety and the safety of others. The letter from Dr. Pollock presented to the Fire District in January 1988 advised that the rescue work, which was 90 per cent of the on-line firefighters' duties, could not be performed by Severino without a risk of transmission of the AIDS virus. The district court differed from the opinions of Drs. Sanders and Pollock in assessing the nature and likelihood and gravity of risk, and adopted the testimony of Dr. Schwartz and the common sense appraisal of the avoidance of risk at a rescue site. Even if the belief of posing a risk through rescue duties was erroneously held by the other two doctors, the defendants relied upon this reasonable medical opinion in assigning Severino to modified duties. Medical knowledge as it developed and was disseminated may have progressed ahead of the parties' awareness, but the perceived risk of transmission of AIDS at that time was a fact that was dealt with reasonably by the assignment of Severino to "light duty." The Chief's frustration of dealing with an employee who would not work as directed without causing a confrontational work environment entered the scenario following the original accommodation to help Severino. The hostile conduct of Severino towards the Chief supports the district court's conclusion that he was not terminated solely on the basis of his handicap. The reasons articulated for the employment termination do not encompass unjustified consideration of the handicap itself. See Pushkin v. Regents of University of Colorado, 658 F.2d 1372, 1387 (10th Cir.1981).
 
 
 9
 This is not a case of the employer being insensitive to the shock and distress of the victim dealing with a recent diagnosis of AIDS. While it is clear that the employment decisions were, in part, a response to the AIDS diagnosis and Severino's voluntary offer to resign because of his condition, we must consider whether there is liability under Section 504 for making the employment accommodations and effectuating a termination under all of the circumstances unique to these facts. The inquiry has to be on whether the [defendants have], in fact, discriminated on the basis of handicap." Id. at 1383.
 
 
 10
 With respect to Section 504 of the Rehabilitation Act, Severino argues that the district court incorrectly applied the "intent to act" standard by relying on a "helpful motivation" defense to negate the intent element. The court reasoned that there was no purposeful discrimination. He argues that discriminatory conduct may also involve "benign neglect" by an employer through a lack of appropriate accommodation for the handicapped employee's abilities or a failure to investigate the means for providing such accommodations. See Alexander v. Choate, 469 U.S. 287, 295, 105 S.Ct. 712, 717, 83 L.Ed.2d 661 (1985).
 
 
 11
 The assertion of error of an improper application of the discriminatory intent standard under Section 504 is not dispositive in this case. We conclude that following the accommodations made for Severino's health status, the job termination based on his refusal to perform modified or regular work duties does not provide a basis to claim discrimination solely on the basis of being handicapped.[4] Cf. Pushkin, 658 F.2d at 1385 (if individual is not otherwise qualified he cannot be said to have been rejected solely because of handicap). For scrutinizing claims under Section 504, first, the individual is required to show that he is otherwise qualified for the position; second, the individual must show that even though he is otherwise qualified, he was rejected for the position, or discriminated against, solely on the basis of his handicap. Id. This burden of proof was not met by Severino. Thus, the intent standard cannot be the basis of error.
 
 
 12
 The statute does not subject employers to liability for maintaining appropriate discipline in the workplace or making reasonable decisions to terminate unsatisfactory employees. Evenhanded treatment of employees in a covered program or activity does not require an institution to lower or effect substantial modifications of standards to accommodate a handicapped person. Cf. Southeastern Community College v. Davis, 442 U.S. 397, 410-12, 99 S.Ct. 2361, 2369-70, 60 L.Ed.2d 980 (1979) (no affirmative-action obligation on all recipients of federal funds). The termination of Severino was directly related to a dispute arising from his reassignment status and job conduct, following a reasonable accommodation to maintain his position as a firefighter. The termination was therefore for a legitimate reason, not based on unlawful discrimination. Thus, we affirm the judgment in favor of the defendants on the Section 504 claims, and the issue regarding damages under the Rehabilitation Act is rendered moot.
 
 
 13
 Finally, with respect to the equal protection and due process claims, 42 U.S.C. Sec. 1983, and the Florida Constitution, the facts here do not support an alternative basis for finding liability. Relevant to these claims is the fact that Severino was treated differently only to the extent of providing him an alternative to his initial voluntary resignation due to his HIV status. The legal issues merit no further discussion, as the reasons given above for affirming the denial of the Section 504 claims are applicable to these claims as well.
 
 Conclusion
 The judgment in favor of the defendants is
 
 14
 AFFIRMED.
 
 KRAVITCH, Circuit Judge, dissenting:
 
 15
 Respectfully I dissent. In the complex circumstances that led to the release of appellant from his job as a firefighter the legal issue is neither whether the employer had good intentions and was trying to help him in his struggle with HIV and, ultimately, AIDS, nor that the fire department did not know what to do with him. Nor is the court's impression that appellant's pursuit of his legal rights made him a "lawsuit promoting" person relevant, except as it affected his credibility at trial on some minor points.[1] The issue is causation: did his condition cause or result in his dismissal from his job? A full review of the trial record shows that his condition was at least a necessary cause of his dismissal and may also be viewed as the primary or sole cause of his dismissal. He would not have been dismissed but for his medical condition, and for this reason he is entitled to relief.
 
 
 16
 The Rehabilitation Act forbids discrimination against otherwise qualified people in federally funded programs "solely by reason of her or his handicap." 29 U.S.C. Sec. 794(a). This does not mean, however, that if the employer can articulate any reason for discriminatory behavior other than handicap there is no claim under the statute. Cases interpreting the statute have held that if an employer discriminates on the basis of the handicap, an employee may have a valid complaint. See Reynolds v. Brock, 815 F.2d 571, 574 (9th Cir.1987); Pushkin v. Regents of Univ. of Colorado, 658 F.2d 1372, 1386-87 (10th Cir.1981). In cases in which a legitimate motive is mixed with an illegitimate (i.e., handicap-based) motive, the inquiry is whether the illegitimate motive was the most significant factor in or was a "but for" cause of discriminatory conduct. See Ross v. Beaumont Hospital, 687 F.Supp. 1115, 1118, 1120 (E.D.Mich.1988); Sanders by Sanders v. Marquette Public Schools, 561 F.Supp. 1361, 1372 (W.D.Mich.1983); see also Pushkin, 658 F.2d at 1387 (plaintiff may prove "reasons articulated for the rejection other than the handicap encompass unjustified consideration of the handicap itself"); Lawson, AIDS, Astrology and Arline: Towards A Causal Interpretation of Section 504, 17 Hofstra L.Rev. 237, 259, 265 (1989) (recognizing "but for" causation standard, despite the word "solely"). In this respect, the causation standard of the Rehabilitation Act is similar, although not identical, to other federal civil rights statutes. See 41 C.F.R. Sec. 101-8.312 (Title VI procedures applicable to Rehabilitation Act);[2] see also Prewitt v. United States Postal Service, 662 F.2d 292, 309-310 (5th Cir. Unit A 1981) (applying Title VII proof model to handicap discrimination). Therefore, the Rehabilitation Act's use of the word "solely," upon which the district court and majority opinions rely, does not mean any explanation for discriminatory action will shield the defendant from liability. Only a legitimate reason that outweighs or nullifies the effect of an illegitimate reason based on handicap will defeat a claim.
 
 
 17
 The Supreme Court repeatedly has characterized the federal regulations designed to implement the Rehabilitation Act as "an important source of guidance on the meaning of Sec. 504." See Alexander v. Choate, 469 U.S. 287, 304 n. 24, 105 S.Ct. 712, 722 n. 24, 83 L.Ed.2d 661 (1985) (quoted in School Bd. of Nassau County v. Arline, 480 U.S. 273, 279, 107 S.Ct. 1123, 1127, 94 L.Ed.2d 307 (1987) and in Traynor v. Turnage, 485 U.S. 535, 549 n. 10, 108 S.Ct. 1372, 1382 n. 10, 99 L.Ed.2d 618 (1988)). In this case the relevant federal regulations are those prohibiting discrimination on the basis of handicap in employment. 41 C.F.R. Sec. 101-8.305. Throughout these regulations, the word "solely" is not used to describe causation; discrimination is forbidden "on the basis of" or "because of" handicap. Id. at Sec. 101-8.305(a), (b). The regulations forbid limiting, segregating, or classifying employees in a way that adversely affects their opportunities or status because of handicap. Id. These prohibitions apply to all aspects of employment, including terminations, job assignments and leaves of absence. Id. at Sec. 101-8.305(d)(2), (4), (5), (9). These regulations are not mere technical suggestions, but carry the authority of law traditionally afforded federal regulations designed to implement a statute.
 
 
 18
 In failing to use the Rehabilitation Act causation standard outlined above, the district court erred as a matter of law. In its oral ruling from the bench, the district court repeatedly stated that the supervisors at the fire department were trying to help appellant, and thus there was no showing of intentional discrimination. Dist. ct. ord. at 31, 49, 50. In fact, the court called this its "ultimate and, perhaps, most important finding" in its denial of the claim. Id. at 50. However, intentional discrimination is not required to make out a claim under the statute, as the Supreme Court and lower courts have unequivocally held. See Alexander v. Choate, 469 U.S. 287, 294-97, 105 S.Ct. 712, 716-18, 83 L.Ed.2d 661 (1985); Georgia State Conf. of Branches of NAACP v. Georgia, 775 F.2d 1403, 1427 (11th Cir.1985); Pushkin, 658 F.2d at 1384; Sanders, 561 F.Supp. at 1372; New Mexico Ass'n for Retarded Citizens v. New Mexico, 495 F.Supp. 391, 398 (D.N.M.1980), rev'd on other grounds, 678 F.2d 847 (10th Cir.1982). In the words of the Pushkin court: "Discrimination on the basis of handicap usually results from more invidious causative elements and often occurs under the guise of extending a helping hand or a mistaken, restrictive belief as to the limitations of handicapped persons." 658 F.2d at 1385.
 
 
 19
 As the majority points out, the district court's legal error does not preclude affirmance on other grounds if appellant's claim is insufficient under the proper causation standard. This requires an examination of the facts of the case, which we review under the clearly erroneous standard. It is important to bear in mind the district court's findings on several key points. First, the district court found, as does the majority at fn. 4 supra, that appellant's asymptomatic HIV status and his subsequent condition as a Class IV AIDS patient brought him under the definition of handicapped persons covered by the federal statute during all times relevant to this lawsuit. Dist. ct. ord. at 20; see also Martinez by and through Martinez v. School Bd. of Hillsborough County, 861 F.2d 1502, 1506 (11th Cir.1988) (AIDS a handicap under section 504); Chalk v. United States Dist. Ct., Central Dist. of Cal., 840 F.2d 701, 709 (9th Cir.1988) (same); Doe v. Centinela Hospital, 1988 WL 81776, at * 7, 1988 U.S.Dist. LEXIS 8401, at * 21 (C.D.Cal.1988) (HIV a handicap). Second, the district court found that appellant was qualified to perform full firefighting duties at the time he was reassigned to light duty in December 1987 and at the time he was fired in May 1988.[3] Dist. ct. ord. at 20, 22-23. This is supported in the record by the testimony of his treating physician, Dr. Schwartz, whom the district court specifically credited over other medical testimony.[4] In addition, as late as February or March 1989 appellant was engaged in full firefighting duties as a volunteer at another fire department and played a leading role in quelling a bridge fire on the Tallahassee River. Third, the district court found that the fire department's conduct violated the federal regulations enforcing the statute. Dist. ct. ord. at 30, 46. The department reassigned appellant to light duty and eventually dismissed him without consulting any independent medical authorities. As the district court explained:
 
 
 20
 In ordering plaintiff to do light duty, the department did not consult medical authorities, did not take affirmative steps which plaintiff contend[s] should have been taken to ensure that discrimination on the basis of his handicap did not occur. The department did nothing.... They did not, until later, adopt a policy with reference to these diseases. They did things too late to ensure that the assignment of light duty to the plaintiff was not on the basis of his handicap.
 
 
 21
 Dist. ct. ord. at 46-47.
 
 
 22
 Finally, the district court found appellant never knowingly and intelligently waived his rights under the statute because he was initially unaware of them.[5] Only in January 1988 did he become aware that he could perform as a full firefighter and that he had a legal right to pursue that position. Appellant wanted to return to work and attempted to do so after he was fired, and he asserted his rights under the statute through his attorney first in March and then again in May 1988.[6] I agree with the district court's factual findings on these four aspects of the case.
 
 
 23
 These findings seem to require a finding of liability under the statute. Indeed, the majority acknowledges that handicap played a role in the reassignment and subsequent dismissal. However, the majority affirms the district court's denial of appellant's claim because it concludes that appellant was dismissed for legitimate reasons, not "solely" on the basis of handicap. It is with this conclusion that I disagree.
 
 
 24
 A review of the record shows that the reasons furnished for dismissing appellant were insubstantial when viewed alongside the admitted consideration of his HIV/AIDS status. The initial decision to reassign him to light duty was indisputably based on handicap alone. There had not been any allegations of inadequate job performance before appellant told the department he had tested positive for HIV. What is contested is the reason for placing appellant on medical leave and his subsequent release. According to appellees, Severino was fired because of a single incident in January or February 1988 when appellant stated to his superiors that he did not want to perform certain aspects of the light duty assignment, specifically dump runs and hydrant cleaning, because he feared it would adversely affect his health. No written record was made of this incident, nor is there evidence of a specific reprimand in appellant's personnel file, the usual practice. R5-176. There was no warning that the incident, or similar ones, would cost him his job. Appellant was placed on 90-day medical leave in February 1988.[7] Then, months later and with no intervening incidents or deliberations, appellant was summarily fired in May 1988. According to the fire chief, the department's disciplinary regulations and practice usually entailed oral reprimand after a first offense, a written reprimand after a second, then after a third offense time off or termination. R5-124.[8] In this case, the reason for the dismissal was a single incident which resulted in only an oral reprimand, the details of which are disputed. One witness, employed at the fire department for twenty-three years, testified that he did not know of any other situation in which a superior officer gave an oral reprimand and then fired a firefighter without taking intermediate measures such as a written reprimand or suspension. R6-152.[9]
 
 
 25
 Viewing the entire record, the department's explanation does not plausibly account for the firing of a formerly satisfactory employee when compared with the admitted consideration of his handicap. Thus, to return to the causation standard outlined above, appellant would not have been fired but for his handicap.[10] His reassignment to light duty was based on handicap alone, and that reassignment placed him in an uncertain position; medical leave and dismissal were merely the extension of it. Other reasons given for the firing do not sever this chain of causation because they are not credible. Therefore appellant has made out the elements of a statutory claim.[11]
 
 
 26
 I also disagree with the majority's disposition of appellant's claim based on the Florida Constitution. It merits discussion because it appears to provide a separate avenue of relief. The Florida Constitution "Basic Rights" section reads in part: "No person shall be deprived of any right because of race, religion or physical handicap." Fla. Const. Art. I, Sec. 2. In one case a federal district court stated that a county employee with AIDS could bring an action based on this section. Shuttleworth v. Broward County, 639 F.Supp. 654, 660 (S.D.Fla.1986); see also Florida Paraplegic Ass'n v. Martinez, 734 F.Supp. 997, 1006 n. 18 (S.D.Fla.1990) (paraplegics may have cause of action under Florida Constitution) (dictum); Schreiner v. McKenzie Tank Lines & Risk Management Services, Inc., 408 So.2d 711, 713 n. 2 (Fla.App.1982) (epilepsy a handicap under Florida Constitution) (dictum). The interpretation of the constitutional provision on handicap is aided by the Florida legislature's passage in 1989 of legislation to extend the existing state protections against AIDS-related discrimination: "Any person with or perceived as having acquired immune deficiency syndrome, acquired immune deficiency syndrome related complex, or human immunodeficiency virus shall have every protection made available to handicapped persons." Fla.Stat. Sec. 760.50(2). According to one commentator: "By incorporating prior handicap law, the 1989 Enactment extends state constitutional protections to those who have AIDS, ARC, HIV infection or the perception of any of these illnesses." Waters, AIDS and the Perception of AIDS as Handicaps Under Florida Law, 17 Fla.State L.Rev. 441, 462 (1990). Thus, although there are as yet no reported cases on the point, the Florida Constitution appears to provide appellant with a cause of action provided the other requirements for recovery are met. In this case, the same facts that make out a federal cause of action appear to suffice to prevail under the Florida Constitution. A state constitution may afford greater protection than federal law provides, and in this case the Florida Constitution seems to provide at least a parallel, if not more favorable, route to recovery.
 
 
 27
 For the foregoing reasons, I respectfully dissent.
 
 
 
 [1]
 The statute is entitled Nondiscrimination Under Federal Grants and Programs; promulgation of rules and regulations. It applies only to activities that are the recipient of federal funding. The defendants received federal funding in connection with acquiring excess fire fighting equipment
 
 
 [2]
 C.F.R. 41, Section 101-8.305(b) provides, in pertinent part: A recipient shall make all decisions concerning employment ... in a manner which ensures that discrimination on the basis of handicap does not occur and may not limit, segregate, or classify ... employees in any way that adversely affects their opportunities or status because of handicap
 
 
 [3]
 29 U.S.C. Sec. 794(a) provides, in pertinent part: No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance
 
 
 [4]
 The contagiousness of the disease brings AIDS within the definition of a handicap. 29 U.S.C. 706(8)(B); see School Board of Nassau County v. Arline, 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987). The Fire Chief and others regarded Severino as handicapped. As a victim of the disease of AIDS, he suffered an impairment of a major life activity or activities
 
 
 [1]
 It is also noteworthy that the district court's finding that appellant's condition as an AIDS patient affected his memory and rendered him less credible was unsupported by medical testimony of any kind. Dist. ct. ord. at 36
 
 
 [2]
 Some jurisdictions have explicitly endorsed the "but for" standard in Title VII cases; others have stated that liability exists if a prohibited consideration such as race was a discernible or significant factor in discriminatory conduct. See Lawson, supra, at 259 n. 100 (discussing cases); Schlei & Grossman, Employment Discrimination Law (2d ed. & 1983-88 Supp.) at 484. The responsibility to disentangle legitimate from illegitimate motives also resembles the court's inquiry into pretextual justifications under Title VII. If a plaintiff makes a prima facie case for discrimination under Title VII and the defendant offers a non-discriminatory explanation, the court will examine the defense to see if it is pretextual. See, e.g., Moore v. Alabama State Univ., 864 F.2d 103, 105 (11th Cir.1989)
 
 
 [3]
 This means appellant was "otherwise qualified" under the statute, even without any "reasonable accommodation." The regulations provide: "A recipient [of federal funds] shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program." 41 C.F.R. Sec. 101-8.306(a)
 
 
 [4]
 It is also supported by the testimony of fire chief Brown:
 Q: "Was there ever a time when you considered Mr. Severino could not physically do his job?"
 A: "No."
 R9-90.
 
 
 [5]
 He wanted to do the light work. But that was not a sufficient discharge of the department's obligation. The department was not, under the regulation, entitled to rely simply on the plaintiff's willingness to do the light work, and his preference and, indeed, insistence that he not be put back on the [firefighting] line
 Dist. ct. ord. at 47.
 
 
 [6]
 Although appellees initially disputed liability based on the fact that appellant was a probationary employee, they specifically abandoned that defense in light of testimony that his probationary status had nothing to do with his dismissal
 
 
 [7]
 The term "medical leave" is evidence enough that appellant's handicap was still uppermost in the employer's mind
 
 
 [8]
 The department's regulations on formal corrective action, Sec. 905, read:
 Formal corrective action shall be construed to mean such action taken by Superior Officers against subordinates where actual punishment is imposed. The results of such formal action shall be made a permanent record in the Department and in the personnel file of the offending member. Formal corrective action includes, but is not limited to the following:
 
 
 [905]
 1 Written Reprimand
 
 
 [905]
 2 Suspension
 
 
 [905]
 3 Demotion
 
 
 [905]
 4 Dismissal
 Appellant's Trial Exhibit C, at 36.
 
 
 [9]
 In civil rights cases the departure from usual disciplinary procedures is evidence of pretext. Schlei & Grossman, supra, at 1314-15
 
 
 [10]
 This conclusion is reinforced by the testimony of fire chief Brown:
 Q: "It is your opinion that if Mr. Severino hadn't said anything to you, he would still be working there today, if he hadn't said anything about his HIV positivity?"
 A: "Yes."
 R5-76.
 
 
 [11]
 I reserve a discussion of remedies, also at issue in this case, for another occasion